802 P.2d 631

**Billy Don SCOGGINS, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

No. 19319.

Supreme Court of New Mexico.

Nov. 26, 1990.

Jacquelyn Robins, Chief Public Defender, Hollis Ann Weisz, Appellate Defender, Santa Fe, for petitioner.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for respondent.

OPINION

SOSA, Chief Justice.

We granted a writ of certiorari to petitioner, Billy Don Scoggins, in order to review the decision of the court of appeals reversing the trial court's dismissal of criminal charges against petitioner. Petitioner was charged with possession with intent to distribute methamphetamine, conspiracy to commit possession with intent to distribute methamphetamine, possession of a controlled substance, phenylacetone, and possession of drug paraphernalia.

Before trial, the district court dismissed the charges because of the State's loss of evidence. The lost evidence consisted of methamphetamine seized by the police during a raid on a "meth lab" allegedly run by petitioner and co-conspirators, samples of phenylacetone also seized, as well as all paraphernalia seized, including glassware and cookers, and latent fingerprints of petitioner taken from items found in the lab, along with the equipment on which the fingerprints were allegedly found.

The evidence was lost through no fault of the prosecution, but through negligence on the part of state police officials who had been storing the evidence and who inadvertently sent it to another state for destruction along with other material of a similar nature that had caused a toxic spill at police headquarters.

The State moved to proceed to trial with photographs of the missing material taken at the scene along with a diagram of where the materials were found. The State further intended to offer expert testimony on the missing fingerprints.

The trial court found that, without the fingerprints themselves, the State could prove no more than the presence of petitioner at the scene of the seized materials. The court also ruled that introduction of expert testimony on the fingerprints, with-

out the fingerprints themselves, would deprive petitioner of his right to cross-examine the expert. It dismissed the charges against petitioner and a co-defendant. On the State's appeal, the court of appeals proposed summary reversal of the trial court. In the calendar notice the court of appeals stated:

> We know of no authority that allows the trial court to dismiss the charges against the defendants on the basis of "lost" evidence unless the loss is intentional or the state has been found to be grossly negligent. *Cf. State v. John Doe,* 92 N.M. 354, 588 P.2d 555 (Ct.App.1978). Rather, in situations where the loss of evidence is known prior to trial, the court has two alternatives: *suppression of the evidence, or admission of the evidence with full disclosure of the loss and its relevance and import. See State v. Chouinard,* 96 N.M. 658, 634 P.2d 680 (1981). Based on the above, we propose to hold the trial court erred in dismissing the charges against defendants.

The court of appeals then entered an opinion reversing dismissal against petitioner, stating, "we are not convinced that [petitioner] will not receive a fair trial despite the destroyed evidence." *State v. Scoggins,* Nos. 11,944/11,945, slip op. at 3 (N.M.Ct.App. March 13, 1990). The court virtually repeated the language emphasized in the calendar notice as emphasized above, stating: "[W]here the loss of evidence is known before trial there are two alternatives for trial court: exclusion of all evidence, or admission with full disclosure of the loss and its relevance and import." *Id.* at 2.

After we remanded the case to the court of appeals for rehearing, the court of appeals issued a new opinion, in which the court withdrew its previous opinion and changed the language just quoted to read: "[W]here the loss of evidence is known before trial there are two alternatives for the trial court: exclusion of all evidence which the lost evidence might have impeached, or admission with full disclosure of the loss and its relevance and import." *State v. Scoggins,* Nos. 11,944/11,945, slip op. at 2 (N.M.Ct.App. June 28, 1990). Peti-

tioner argues that the added language is crucial, contending: "The trial court could reasonably have excluded all the state's witnesses' testimony of fingerprints, because the defense would not have been able to cross-examine the expert on the basis for his opinion."

■ Petitioner argues that the court of appeals' decision conflicts with prior opinions in *State v. Chouinard,* 96 N.M. 658, 634 P.2d 680 (1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982); *State v. Weber,* 76 N.M. 636, 417 P.2d 444 (1966); and *State v. Beachum,* 83 N.M. 526, 494 P.2d 188 (Ct.App.1972). We do not find *Weber* and *Beachum* to be on point. In *State v. Chouinard,* we referred to a three-part test the court of appeals adopted in *State v. Lovato,* 94 N.M. 780, 782, 617 P.2d 169, 171 (Ct.App.1980), to determine whether deprivation of evidence by the State constitutes reversible error. As set out in *Chouinard,* that test is as follows:

> (1) The State either breached some duty or intentionally deprived the defendant of evidence;
>
> (2) The improperly "suppressed" evidence must have been material; and
>
> (3) The suppression of this evidence prejudiced the defendant.

96 N.M. at 661, 634 P.2d at 683.

We noted that, insofar as unavailable evidence is concerned, even if all three requirements of the *Lovato* test are met, reversal does not necessarily follow as a matter of course. *See id.* We emphasized that the unavailable evidence, in order to lead to reversible error, must in some way have been "determinative of guilt." *Id.* at 662, 634 P.2d at 684. Further, in *Chouinard* we addressed the issue not just of *unavailable* evidence but of *lost* evidence. We then stated:

> Where the loss is known prior to trial, there are two alternatives: Exclusion of all evidence which the lost evidence might have impeached, or admission with full disclosure of the loss and its relevance and import. *The choice between these alternatives must be made by the*

*trial court,* depending on its assessment of materiality and prejudice. The fundamental interest at stake is assurance that justice is done, both to the defendant and to the public.

\* \* \* \* \* \*

Determination of materiality and prejudice must be made on a case-by-case basis. The importance of the lost evidence may be affected by the weight of other evidence presented, by the opportunity to cross-examine, by the defendant's use of the loss in presenting the defense, and other consideration. *The trial court is in the best position to evaluate these factors.*

*Id.* at 662–663, 634 P.2d at 684–85 (emphasis added).

In weighing the trial court's determination in the light of *Lovato* and *Chouinard,* we find that the trial court exercised prudent discretion in dismissing the charges against petitioner. Accordingly, we reverse the June 28, 1990 decision of the court of appeals. We defer to the trial court's discretion in deciding that testimony on the missing fingerprints should be suppressed because it may have been impeached by lost evidence. Without the missing fingerprints the State would have had no case.

Our holding is not in conflict with *State v. Bartlett,* 109 N.M. 679, 789 P.2d 627 (Ct.App.1990). In that case a lost tape recording made by a rape victim describing her attacker was material to the defendant's guilt, but its loss was neither crucial nor prejudicial because the rape victim herself gave substantial testimony at trial as to the defendant's identity, and defendant had an opportunity to present inconsistencies in her testimony and to cross-examine her. Here, on the other hand, there was virtually no other credible evidence as to petitioner's guilt than the lost fingerprints. The loss of the original fingerprints was crucial. Their unavailability prejudicially limited petitioner's ability to impeach the determinative evidence linking him to the meth lab. *See also State v. Fero,* 105 N.M. 339, 344–45, 732 P.2d 866, 871–72 (1987) (loss of carpet pieces neither materially nor

prejudicially affected defendant's right to confront a witness who did not know of the existence of the carpet or how the missing pieces refer to the evidence in his testimony; *cf. State v. Hannah,* 120 Ariz. 1, 583 P.2d 888 (1978) (defendant prejudiced by lost evidence to such an extent that he had been denied due process); *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (bad faith on part of police must be shown before police loss of potentially useful evidence amounts to denial of due process).

For the foregoing reasons, the decision of the court of appeals is reversed and the case is remanded to the trial court for any further rulings as are not inconsistent with our ruling herein.

IT IS SO ORDERED.

RANSOM, MONTGOMERY and WILSON, JJ., concur.

BACA, J., dissenting.

BACA, Justice (dissenting).

I respectfully dissent from the majority's opinion. Before explaining why I believe the court errs in upholding dismissal, I wish to make it clear that I do not condone a police department's, or any investigative branch of the state's, negligence or malfeasance in failing to safeguard and preserve for trial evidence relating to a crime. The police have a duty to insure that all relevant evidence is properly preserved for use by the state and the defense, when appropriate. It must assist the prosecution in making its case and assist the state in obtaining proper convictions while preventing aspersions from being cast on the criminal trial process.

Having said this, I believe in this case, where there is no claim that the evidence was lost in bad faith, and the defendant has not shown prejudice to the degree that he would be denied a fair trial, dismissal exceeded the court's discretion.

In *State v. Chouinard,* 96 N.M. 658, 662–63, 634 P.2d 680, 684–85 (1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982), we indicated that when

evidence is lost negligently or in a way not involving bad faith, a defendant bears the burden to show prejudice and materiality before sanctions are appropriate. Once this burden has been carried, the court has two options: exclusion of all evidence that the lost evidence might have impeached, or admission with full disclosure of the loss. Dismissal is an extreme sanction to be applied· only in exceptional cases, when it appears that the defendant could not receive a fair trial. *State v. Bartlett,* 109 N.M. 679, 789 P.2d 627 (Ct.App.1990).

As far as the lost drug paraphernalia, it is not apparent to me that the loss prejudiced the defendant. The state apparently did not intend to offer chemical analysis of the lost items, and offered to present photographs of the methamphetamine laboratory.[1] The lost fingerprints present a more difficult case, but their loss does not appear to rise to the level of preventing a fair trial and thus does not justify the draconian sanction of dismissal. The district court indicated that, because the fingerprint was lost, the prosecution could prove no more than the presence of the defendant at the scene of the laboratory. There are, however, in addition to direct proof, alternative means to show possession. It can be shown through circumstantial evidence. *See State v. Sanchez,* 98 N.M. 428, 649 P.2d 496 (Ct.App.1982); *State v. Paul,* 82 N.M. 619, 485 P.2d 375 (Ct.App.), *cert. denied,* 82 N.M. 601, 485 P.2d 357 (1971) (circumstantial evidence connecting defendant to crime may serve as basis for inference of fact to establish offense); *see also* SCRA 1986, 14–5001, –002 (Uniform Jury Instruction condoning use of circumstantial evidence). It is well established that, to establish possession of narcotics, actual possession need not be proven—constructive possession suffices. *See United States v. Medina,* 834 F.2d 874 (10th Cir.1987); *State v. Montoya,* 94 N.M. 704, 616 P.2d 417 (1980); *State v. Brietag,* 108 N.M. 368, 772 P.2d 898 (Ct.App.1989);

*State v. Doe,* 103 N.M. 178, 704 P.2d 432 (Ct.App.1984) (constructive possession where defendant shown to have knowledge of presence of controlled substance and control over substance); *see also* SCRA 1986, 14–3130 (Uniform Jury Instruction). A reading of this authority indicates that the prosecution could prove possession without evidence of a fingerprint connecting the defendant directly to the paraphernalia.

Because this case is not before us on a complete record,[2] we do not know what other evidence was offered by the state to prove possession, and therefore whether it was an abuse of discretion to dismiss. I do believe, however, that if the state could prove possession by alternative means, the court did abuse its discretion by dismissing this case.

---

1. In *Chouinard,* 96 N.M. at 661–62, 634 P.2d at 683–84, we noted that certain types of evidence may be used up or lost before its significance is realized without prejudice to the defendant, and sanctions are inappropriate.

2. Certiorari was granted off of the court of appeals' summary calendar.