808 P.2d 972

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Jimmy MATHIS and Benny A. Mathis, Defendants–Appellees.**

**No. 11799.**

Court of Appeals of New Mexico.

Feb. 7, 1991.

Certiorari Granted March 20, 1991.

Tom Udall, Atty. Gen. and Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jacquelyn Robins, Chief Public Defender and Jerry Todd Wertheim, Asst. Appellate Defender, Santa Fe, for defendants-appellees.

## OPINION

BIVINS, Judge.

The state appeals an order dismissing with prejudice criminal charges against defendants based on the state's failure to comply with the district court's discovery order. It claims: (1) abuse of discretion in ordering the prosecution to produce a list that did not exist and which was not material or relevant; and (2) assuming no error in no. 1, abuse of discretion in utilizing the most severe sanction in lieu of lesser sanctions. We discuss these issues in somewhat different order. We first address the effect of the supreme court's writ of prohibition issued to the district court during the discovery proceedings. Second, we generally address the applicable discovery rule and the duties and obligations of the respective parties. Third, we discuss whether the district court abused its discretion in imposing the sanction of dismissal, and conclude that it did. Finally, we provide guidelines for the district court on remand. Because we conclude the district court abused its discretion in dismissing the criminal charges, we set aside its order and remand for further proceedings.

## BACKGROUND

The following, other than the recitation of the charges, is taken from findings in the district court's order of dismissal. The state charged defendants with various counts of trafficking controlled substances, based on information supplied to the state police by an informant, Owen Bradley. Bradley had arranged and personally transacted the alleged drug deals.

Defendants filed a motion for discovery in district court in February 1988. On July 25, 1988, the district court entered an order granting some of defendants' requests for discovery. Pertinent to this appeal, that order required the state to produce:

A complete list by style to include but not limited to Defendants' names, courts, court numbers, dates of filing, and summary of charges of every case filed by the State of New Mexico in any court in the State of New Mexico which was based upon information supplied by Owen Bradley.

The list was to contain only cases "now public in which Owen Bradley's identity was disclosed." The July 25 order also required the state to disclose Bradley's "rap sheet" and any documents reflecting payment of funds related to the pending case against defendants.

On November 18, 1988, the district court heard and denied defendants' motion to dismiss for failure to comply with the discovery order of July 25, 1988. In its later order dismissing the case, the district court recited "unrebutted evidence" received at the November 1988 hearing that Bradley had worked for several law enforcement agencies throughout New Mexico as a paid informant; that agent Mike French of the New Mexico State Police, who had filed the criminal complaint in this case, wrote every police and sheriff's department in New Mexico requesting information on Bradley and had received fifty-seven responses, all of which were made available to the defense; that Bradley had worked for the state police in other New Mexico communities; that John Templeman, assistant counsel for the Department of Public Safety

(Department), had written Agent French, in response to a request for information on Bradley, advising that he had checked with the Narcotics Bureau but was unable to supply information because the files were not indexed by reference to the informant, and that it would not be feasible to contact the many officers who had served in the Bureau over the past years; and that Bradley's role in drug-related cases has been made public in the Sixth Judicial District (the district which encompasses the county in which defendants' case was filed), and that those cases have been disclosed to the defense.

The dismissal order also stated that the district court, at the conclusion of the November 1988 hearing, had been satisfied that the district attorney's office and Agent French had made a good faith effort to obtain the Bradley material, "but that the Department of Public Safety had not." As a result, the district court, on November 18, 1988, ordered the secretary of the Department and other officials with the Department to deliver the Bradley material.

The order of dismissal further recites that between November 18, 1988, and February 23, 1989, the Department did nothing either to obtain the discovery material or to further explain why it was unable to do so, but instead moved to set aside the November 18 order on jurisdictional grounds. That motion, made on December 1, 1988, was denied on January 5, 1989, and the Department was given until March 1, 1989, to deliver the material.

On February 23, 1989, the Department filed a petition with the state supreme court asking for a writ of prohibition. The supreme court made permanent its alternative writ of prohibition and set aside the November 18 and January 5[1] orders. Its order required the district court to desist from entering further orders to the Department or its officials without prior notice and an opportunity to be heard. The supreme court did allow the district court to proceed under its prior order of July 25,

1988, "in a manner not inconsistent with this Order."

On June 15, 1989, the district court issued its order directing the secretary of the Department to show cause why he should not immediately provide the discovery material ordered on July 25, 1988. The Department challenged the order on jurisdictional grounds. That challenge was denied.

On June 30, 1989, the district court held a hearing and gave the Department until July 10, 1989, to produce the discovery material. On July 10, the state filed the affidavit of Major A.P. Wickard, head of the Narcotics Bureau, stating that he had searched the records with respect to compiling a list as required by the July 25, 1988, order; that the records showed Bradley was used by several New Mexico State Police narcotics agents, some of whom were active and others retired; that he had contacted the currently employed agents but that none had any memory of the informant's name ever being made public; that he had made several unsuccessful attempts to contact retired officers; and that the records did not indicate Bradley's name being made public.

The district court found Major Wickard's affidavit did not establish the Department acted in good faith or show good cause why defendants' motion to dismiss should not be granted. The order recites three extensions of the six-month rule (SCRA 1986, 5–604) granted the state, resulting in a delay of approximately eighteen months, which the court found attributable to the Department's reluctance to provide the discovery material. The district court found this delay had prejudiced defendants "by continuing limited conditions of release and impairing their freedom."

The district court found the state had complied with the requirements of the July 25, 1988, order, with the exception of the Bradley material set forth above. Based on that failure, the district court dismissed the case against defendants with prejudice.

---

**1.** The supreme court's order refers to "January 6"; however, since no order was entered on January 6, the correct date is January 5.

This appeal followed. *See* NMSA 1978, § 39-3-3(B)(1) (state given appeal from dismissal of criminal complaint, indictment, or information).

Other facts taken from the pleadings, hearings, and the supreme court proceedings will be noted in the discussion portion of the opinion.

## DISCUSSION

1. *The Effect of the Supreme Court's Writ of Prohibition*

█ Before addressing the merits of the state's appeal, we answer defendants' contention that the supreme court's permanent writ, by allowing the district court to proceed with its July 25, 1988, order conditioned on the Department being given notice and an opportunity to be heard, foreclosed any challenge to the authority of the district court to order the discovery in question. We reject this argument.

The supreme court's order specifically set aside the district court's orders of November 18, 1988, and January 5, 1989, which directed the Department, its secretary, the chief of the state police, and Major Wickard to deliver the Bradley discovery material by a date certain. The supreme court order further ordered the district court to desist from entering further orders directed to the Department or its officials without prior notice and an opportunity to be heard. By further allowing the district court to proceed with its prior order of July 25, 1988, "in a manner not inconsistent with this Order," it can hardly be said that the supreme court intended to bar the Department or its officials from challenging the July 25, 1988, order as it might affect them after they were afforded notice and an opportunity to be heard. To read the supreme court order as defendants suggest would render the right to notice and a hearing superfluous. If the Department and its officials have the right to notice and a hearing, they have a right to be heard at that hearing. The right to be heard includes the right to object insofar as the order affects the Department or its officials.

The dissent interprets the supreme court's order differently. Relying on *State v. Wisniewski*, 103 N.M. 430, 708 P.2d 1031 (1985) (requirement for disclosure applies to all members of prosecutorial team), the dissent would hold that the Department did not have a right to separate notice and a hearing before being required to produce discovery material. While this argument has a certain facial appeal, we believe it runs counter to the clear wording of the supreme court order, which expressly nullified the two orders (November 18, 1988, and January 5, 1989) that directed the Department to produce the list. Given the sensitive nature of the Department's drug-related files, the supreme court could have considered notice and a hearing essential. This would not offend the prosecutorial team concept announced in *Wisniewski*.

This court is free to consider whether the trial court's order dismissing the criminal charges constituted an abuse of discretion.

2. *Rule 5-501(A)(3)*

Because defendants concede that SCRA 1986, 5-501(A)(6) (requiring production of material evidence favorable to the defendant, production of which is required by constitutional due process) did not provide the basis for the discovery order, we address only Rule 5-501(A)(3), the rule defendants contend does apply. Rule 5-501(A)(3) states,

[T]he state shall disclose or make available to the defendant:

. . . .

(3) any books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the *possession, custody or control* of the state, and which are material to the preparation of the defense or are intended for use by the state as evidence at the trial, or were obtained from or belong to the defendant * * * * [Emphasis added.]

Under this rule, defendants requested that the state provide them with a complete list of all cases filed by the state based on information supplied by Bradley, but only in those cases in which Bradley's identity was disclosed.

The state argues that since it did not have within its possession, custody, or control a list of cases filed in the state of New Mexico in which Bradley had supplied information and in which his identity had been disclosed, it had no obligation to compile such a list. While a literal reading of the rule might support the state's position, we conclude that if the state has within its possession, custody, or control documentary information from which a list could be compiled, the rule permits ordering disclosure. This does not mean, however, that the state can be compelled to produce additional information not under its control, nor is it required to conduct an in-depth investigation. *See State v. Clark,* 568 P.2d 406 (Alaska 1977) (state has no obligation to perform independent investigation to determine what aliases informant had used, other than to check what was already within its possession or control). Thus, the Department had no obligation to conduct an investigation going beyond a summary of information contained in the documents within the Department's possession, custody, or control. In particular, the Department had no obligation to call officers to check their memories.

We simply hold that, subject to such safeguards as may be necessary to protect the sensitive nature of its files and records, the Department can be ordered to supply such information as may be needed by defendants in order to effectively present their defense. It may be necessary for the district court to hold in camera proceedings to determine whether and to what extent the Department can be compelled to disclose information within its files and records. The district court suggested this procedure at the November 18 hearing; however, as previously noted, the Department was not given notice of that hearing or subpoenaed, and, further, that suggestion was not carried forth into the order of November 18.

The state also argues that the material requested does not meet the requirement of Rule 5–501(A)(3) that it be material to the preparation of the defense. We disagree. The information defendants sought may be material. *See* R. 5–501(A)(3); *State v. Lovato,* 91 N.M. 712, 580 P.2d 138 (Ct.App.1978). Bradley had been listed in the criminal information as a witness. Defendants contend he is a paid informant who is also a drug addict and alcoholic. Consequently, they wanted the names of cases filed in any court in New Mexico based on information supplied by Bradley in which his identity was disclosed. With this information, defendants hoped to impeach Bradley's credibility by showing that he supported his habits by informing. Thus, the discovery information was material to establish Bradley's motive. *See State v. Lovato.*

Nevertheless, the state is not required to do defendants' work for them. *See State v. Clark; see also United States v. Shoher,* 555 F.Supp. 346 (S.D.N.Y.1983). The record before us indicates that Agent French has already disclosed to the defense the names of some cases in the Sixth Judicial District in which Bradley provided information. At the final hearing before imposition of the sanction, defense counsel stated that they had knowledge of additional cases within that district. If so, then it would be up to defendants to pursue the discovery of that information. The state does not have to prepare their defense.

We note that the discovery order requires disclosure of the Bradley material in every case filed in the state of New Mexico. At some point, the use of such material on cross-examination would become cumulative. *See State v. Baldizan,* 99 N.M. 106, 654 P.2d 559 (Ct.App.1982). This should be kept in mind in further discovery proceedings.

**3.** *The District Court Abused Its Discretion in Dismissing the Charges*

The district court's order finding lack of good faith by the Department (as well as good faith on the part of the district attorney and Agent French) was based on what the court referred to as "unrebutted evidence" offered at the November 18, 1988, hearing. As previously discussed, this consisted, according to the findings, of evidence that Bradley had previously testified

he worked for several law enforcement agencies throughout the state as a paid informant and of Agent French's efforts to obtain this information and make it available to defendants. The district court then recited the orders of November 18, 1988, and January 5, 1989, directed to the Department and the proceedings following the supreme court order which we have previously mentioned. Having reviewed the tapes of the November 18, 1988, hearing and interpreting the supreme court order as the district court apparently did, we can readily understand the district court's frustration. By November 18, it had been nine months since defendants had requested the Bradley material, and there had not been full compliance, at least to the court's satisfaction. By the time Major Wickard filed his affidavit on July 10, 1989, it had been seventeen months. Moreover, at the November 18 hearing, the district attorney fueled doubts concerning the Department's intentions to comply by statements made. This frustration resulted, however, from several misunderstandings.

In finding bad faith, we believe that the district court misapprehended the scope of the supreme court's writ of prohibition and misconceived what could be ordered pursuant to Rule 5–501(A)(3). First, by reciting the orders of November 18, 1988, and January 5, 1989, and finding that the Department did nothing to either obtain the discovery material or explain why it was unable to do so, the district court failed to appreciate the significance of the supreme court's writ setting aside those orders of November 18 and January 5 and giving the Department or its officials the right to prior notice and an opportunity to be heard before entering further orders. The district court's finding 24 states that compliance with the discovery order of July 25, 1988, with the exception of the Bradley material, "does not mitigate the State's conduct in this matter in light of the Department of Public Safety's continuing refusal or reluctance to provide timely discovery." This finding indicates that the district court thought that the Department had been under an obligation to comply since November 18, 1988. This is not cor-

rect. At the earliest, the Department had been ordered to provide the material on June 30, 1989. Up until that time, and since the issuance of the supreme court writ, the district court had issued only one order requiring the Department to show cause why it had not complied, when there had been no order requiring it to comply. Thus, the finding of lengthy delay—which no doubt prompted the severe sanction—was based upon an erroneous belief that the Department had been under order to comply since the prior November 18 order.

■ Second, insofar as the district court relied on matters presented to it at the November 18 hearing (although it is not apparent what, if any, reliance the district court placed on such matters), it was an abuse of discretion by the district court to rely on that information without notifying the Department of its intent to rely and then providing the Department with an opportunity to rebut or respond to anything presented at the November 18 hearing.

■ There is no evidence to suggest that the Department failed to completely comply with its duties under the rule. The affidavit asserts that Major Wickard checked all documents that might provide the necessary information. As explained in our discussion of Rule 5–501(A)(3), the failure of Major Wickard to make verbal contact with former state police officers did not violate the order, as properly construed. When examined in light of the supreme court's writ, Major Wickard's affidavit does not establish bad faith. Further, that affidavit was never discredited by defendants.

The dissent states the affidavit was inconsistent with earlier representations made to the trial court. We cannot agree. The only thing the Department had represented was that its files were not indexed by informants and that it would not be feasible to contact the many officers who had served the Bureau over the past years. Major Wickard's affidavit merely reflects an effort to comply, notwithstanding the problem noted earlier.

#### 4. *Proceedings on Remand*

To ensure that compliance is met, and without interfering with the district court's proper discretion, we set forth the following guidelines. On remand, the following steps should lead to a prompt and satisfactory resolution of the discovery problem:

a. The district court should ascertain the number of cases in which Bradley has provided information known already by defense counsel or their clients, together with the cases in the Sixth Judicial District as provided by Agent French or others.

b. The court should then determine whether that number will adequately allow for cross-examination. If so, any need for further discovery may be outweighed by the burden that would be imposed by compelling it.

c. If not adequate, the district court could hold a hearing to work out the details for obtaining the additional information. The court can then determine how best to balance defendants' need for the information against the state's interest in the confidentiality of its files and other legitimate concerns. The district court may want Bradley available to testify or to examine him in camera. The court may also wish to utilize in camera examination to ascertain the Department's difficulties, if any, in producing additional information. The district court should bear in mind that under Rule 5–501(A)(3) the state (including the Department) is under no obligation to acquire additional information not within documents under its control or to prepare defendants' case for them. *United States v. Shoher; State v. Clark.*

d. The district attorney or the Department may at any juncture move the district court for an in camera hearing or inspection or other orders necessary to otherwise safeguard and protect confidential or sensitive information.

e. The parties, counsel, and the Department shall cooperate with the district court to the end that the above can be completed forty-five days after mandate issues.

If there is failure to comply, then the court should consider a sanction. Rule 5–501(G) provides, "If the state fails to comply with any of the provisions of this rule, the court may enter an order pursuant to [SCRA 1986,] 5–505 or hold the prosecutor in contempt or take other disciplinary action pursuant to [SCRA 1986,] 5–112." Rule 5–505 contains a list of sanctions available when a party fails to comply. Only one could be viewed as contemplating the extreme sanction of dismissal. The rule authorizes the district court, among other sanctions, to "enter such other order as it deems appropriate under the circumstances."

■ Our appellate courts have not heretofore directly addressed the question of whether or under what circumstances criminal charges may be dismissed for failure by the state to comply with a discovery order entered under Rule 5–501.[2] Federal authority interpreting Federal Rule of Criminal Procedure 16(d)(2), which contains similar language to our Rule 5–501(G), indicates the extreme sanction should be used only under extreme circumstances. As a general rule, the district court should fashion the least severe sanction that will accomplish the desired result. *United States v. Euceda–Hernandez,* 768 F.2d 1307 (11th Cir.1985) (court abused discretion in suppressing statements as sanction for prosecutor's violation of discovery requirement); *United States v. Gee,* 695 F.2d 1165 (9th Cir.1983); *United States v. Sarcinelli,* 667 F.2d 5 (5th Cir.1982) (suppression of evidence was abuse of discretion even when prosecutor engaged in contumacious con-

---

**2.** The supreme court recently affirmed a dismissal of criminal charges where the state inadvertently lost evidence. *See Scoggins v. State,* 111 N.M. 122, 802 P.2d 631 (1990) (supreme court held loss of original fingerprints crucial since it prejudicially limited defendant's ability to impeach determinative evidence linking him to methamphetamine lab). While the evidence in question here may be material to defendants' ability to effectively cross-examine a lay witness, it is by no means determinative of defendants' guilt or innocence. *Scoggins* does not require affirmance.

duct). 8 J. Moore, *Moore's Federal Practice* ¶ 26.03[3], at 16–51 to –52 (2d ed. 1990) says, "In an unusual case the court might be justified in taking the extreme measure of ordering the prosecution dismissed" (citing *Harris v. Young*, 607 F.2d 1081 (4th Cir.1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980)).

## CONCLUSION

The order of dismissal is set aside and the case remanded with directions to reinstate the complaint and to proceed consistent with this opinion.[3]

IT IS SO ORDERED.

HARTZ, J., concurs.

APODACA, J., dissents and files opinion.

APODACA, Judge, dissenting.

I respectfully dissent. The majority premises its opinion on a holding that the district court abused its discretion in imposing the extreme sanction of dismissal. I would hold that the district court did not abuse its discretion in dismissing the criminal charges in lieu of lesser sanctions.

## THE EFFECT OF THE SUPREME COURT'S PROHIBITION ORDER

The majority summarily dismisses defendants' arguments that our supreme court's permanent writ of prohibition, in allowing the district court to proceed with the discovery order, foreclosed any challenge by the state to the district court's authority to order the discovery at issue. Although I understand the basis for the majority's conclusion in this regard, I do not necessarily share the majority's view of our supreme court's order filed in that separate proceeding.

Initially, I note that the arguments made by the state in this appeal are identical to the ones made to the supreme court—defendants failed to show that (1) the evidence sought was in the "possession, custody, or control" of the state, and (2) the

evidence was "material to the preparation of the defense." *See* SCRA 1986, 5–501(A)(3). In fact, the authorities relied on in this appeal are the same as those relied on by the Department of Public Service (the Department) and the prosecutor in the petition and briefs filed in the prohibition proceeding. Additionally, the state requested a ruling by the supreme court, as it does in this appeal, that entry of the discovery order was an abuse of discretion. With these issues before the supreme court, it nonetheless ruled "that [the district court] may proceed under its [discovery order of July 25, 1988] in a manner not inconsistent with this Order." The state does not dispute that the district court proceeded in a manner consistent with the supreme court's order, after having given the Department notice and an opportunity to be heard with respect to production of the evidence.

It is unclear to me whether, by ruling that the district court could proceed with a hearing on its discovery order, the supreme court did or did not decide the same issues now raised by the state in this appeal with respect to the propriety of the discovery order itself. I venture to state that, by allowing the discovery order to stand, the supreme court could be reasonably understood to have upheld the order's validity as it related specifically to the issues raised by the state in the writ proceeding. Yet, the majority concludes that to so interpret the supreme court's order "would render the right to notice and a hearing superfluous." I am not convinced such a conclusion is correct. A persuasive argument could be made that the notice requirement was only to afford the Department the opportunity to argue: (1) in favor of certain guidelines that would insure protection of other, unrelated sensitive or confidential material; (2) against certain time limitations within which to produce the evidence; (3) against imposition by the district court of the extreme sanction of dismissal; or (4) any other argument to serve some purpose other than to relitigate in the district court

---

**3.** We note that, although we disagree with several of the dissent's assertions concerning what is in the record, we have not answered them specifically because they are not necessary to the result.

the same issues the Department and the prosecutor were raising in the writ proceeding.

I question why our supreme court would enter its order without at least implicitly addressing and deciding the issues raised before it, thus avoiding additional proceedings. It is indeed unfortunate that the supreme court's order was not more explicit on this point. Nonetheless, I myself am not willing to take the bold step taken by the majority in deciding our supreme court did not reach the same issue. If it is reasonable to interpret the supreme court's proceedings as having considered and decided the issues raised in this appeal, and having essentially held that the discovery order was valid, then those issues common to the writ proceedings and this appeal would certainly not be reviewable by this court. *See Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973). Nevertheless, the district court's discovery order is otherwise affirmable on the merits, as the discussion below indicates.

## PROPRIETY OF DISMISSAL OF THE CRIMINAL CHARGES

Although the state now argues that dismissal of the criminal charges was too extreme, it does not suggest less extreme alternatives, nor did it in the district court. Nor does the state discuss the numerous attempts made by the district court over a period of months to enforce its order short of dismissal. Instead, the state has always relied generally on an argument that the discovery order should never have been entered in the first place. Having elected to take this limited approach, the state failed to challenge certain important findings of the district court that now, in my view, weigh heavily in favor of affirming the district court's order of dismissal.

If, as the state contends on appeal, "creating" the list from the Bradley records was not a reasonable requirement, the Department never made that argument known to the district court until the final hearing. Instead, for months the state continually insisted that it could not be compelled to produce the evidence. For a period of four months after entry of the discovery order, the Department did not respond at all to French's inquiries. When it was advised of the prosecutor's unsuccessful efforts to obtain the information from the Department, the district court itself devised the November 1988 order in an attempt to obtain some kind of response or explanation from the Department. It took an additional three months and another order directed at the Department to finally precipitate a response. Even then, there was, at that time, no representation or argument that the evidence could not be produced or that it was not in the Department's possession or control. Nor were such representations made after the supreme court's order in April 1989, when the Department had been given notice and an opportunity to be heard.

The Department continually refused to provide an explanation for its failure to respond, insisting instead that it be treated as a third party, subject only to subpoena under SCRA 1986, 5–503. The state has abandoned the argument that the district court lacked authority to require the Department to produce the requested material. It now concedes that the Department is to be treated as part of the prosecution team. *See State v. Wisniewski,* 103 N.M. 430, 708 P.2d 1031 (1985); Rule 5–501 (requiring the "state" to disclose); *cf. United States v. Bryan,* 868 F.2d 1032 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989) (district court erred when it refused defendant's request for out-of-district discovery held in the hands of the Internal Revenue Service).

The majority's assumption that state agencies outside of the immediate prosecutorial team must be independently and individually served with notice before being required to produce discovery material, in my judgment, is contrary to *Wisniewski*'s holding that these agencies are part of the prosecutorial team. The majority cites to no authority supporting this new requirement. In fact, I could not uncover any that held similarly. *Cf. United States v. Bryan* ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any feder-

al agency participating in the same investigation of the defendant." *Id.* at 1036). The fact that our supreme court had ruled that the Department was entitled to notice did not nullify the existence of the discovery order that went as far back as July 1988. Simply because the Department had not been directly involved in discussions with the district court earlier should not mean that the period of time from July 1988 can be ignored.

I agree that, if the state agency has concerns regarding release of the information, it should be allowed to voice these concerns to the court. However, I disagree that the agency is under no duty to comply with a legitimate discovery request until directly ordered to do so by the court. Service to the prosecutor is all that should be required.

The fact that the Department was not notified specifically or directly as far back as July 1988 should make no difference. If *Wisniewski* is to have any meaning, it should be that the state, as one of the two parties in a criminal action, encompasses all state agencies. " 'Limiting "government" to the prosecution alone unfairly allows the prosecution access to documents without making them available to the defendant.' " *United States v. Bryan,* 868 F.2d at 1036 (citing *United States v. Robertson,* 634 F.Supp. 1020 (E.D.Cal.1986), *aff'd,* 815 F.2d 714 (9th Cir.), *cert. denied,* 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987)). This would mean to me that the "clock" starts running for the state once the order to compel discovery is issued; it is incumbent upon the prosecutor to initiate all actions to comply with that order. This duty would include notifying the Department that a court-approved discovery request affecting it has been made.

In this respect, it would seem irrelevant that the prosecutor himself acted in good faith. All the good faith in the world would not make up for the bad faith that would be shown by the Department. Under *Wisniewski,* the Department and the prosecutor were part of a team. If one of the team members was unwilling to cooperate, the entire team must suffer the consequences. *See United States v. Bryan.* Besides, I am not willing to exonerate the prosecutor entirely, since I believe he should have taken whatever steps were necessary to force the issue earlier. This would include requesting the district court to take enforcement action long before it actually did, to avoid further delay. *Cf. United States v. Wicker,* 848 F.2d 1059 (10th Cir.1988) (government's assertion that failure to timely comply with discovery order was due to expert's negligence in not forwarding copy of report to the government did not relieve government of its discovery obligation—a single request for the report was not sufficient and had the government made the least effort to follow up on its request, it would not have neglected its duty to disclose). I believe the majority sets a burdensome and unnecessary precedent by putting the onus on the district court to independently notify all agencies of its discovery order.

Sanctions for failure to comply with discovery orders are discretionary with the trial court. *State v. Bartlett,* 109 N.M. 679, 789 P.2d 627 (Ct.App.1990). Although, "dismissal is an extreme sanction to be used only in exceptional cases[,]" the blatant refusal of the Department to comply with the discovery order warranted such extreme. *See id.* at 680, 789 P.2d at 628. A judge abuses his discretion only when the ruling at issue is clearly against the logic and effect of the facts and circumstances in the case, or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances. *State v. Hargrove,* 81 N.M. 145, 464 P.2d 564 (Ct.App.1970).

"Of course no sanction is appropriate if the requested disclosure was not proper within the rules, *although if the court has previously ordered it disclosed further objection to its disclosure is moot and it must be produced.*" 2 C. Wright, *Federal Practice and Procedure:* Criminal § 260, at 121 (2d ed. 1982) (footnotes omitted) (emphasis added). In *United States v. Opager,* 589 F.2d 799 (5th Cir.1979), the government refused to disclose the address of its informant after being ordered by the court to do so on three occasions. The

government's refusal was founded on three arguments: (1) the informant did not want to be interviewed by the defense; (2) defendant already knew the informant's name; and (3) there was no harm resulting from the pre-trial failure to disclose, since the defendant had an opportunity to interview the informant when he was subpoenaed to appear at trial. The court rejected each contention.

But most of all, each of the government's arguments falls flat in light of the Court's *order* requiring disclosure. The government's arguments might properly have been raised in opposing Opager's initial request for [the informant's] address. Once the Court's order was entered, however, the government's objections to disclosure became moot except insofar as the government in an appropriate, timely way sought reconsideration. Otherwise, the government was bound to obey the Court's order.

Of course, obey is exactly what the government did not do. Not once, but three times, did the trial court direct the government to disclose [the informant's] whereabouts to Opager. Nevertheless, the government never complied, stating as its justification for such refusal [the informant's] "wish" not to be interviewed * * * *

The government's refusal to obey the District Court's disclosure order not only affronted the Court and prejudiced Opager's efforts to defend herself. The government's conduct also frustrated the important federal policy favoring broad disclosure in criminal cases * * * *

We hold that the government must comply with the orders of the trial court * * * * [W]e are not in the business of excusing noncompliance after-the-fact on the ground that after all it didn't matter. It does matter that the Court's orders are obeyed. Noncompliance—coupled with substantial likelihood of injury—visits on the government the consequence of this reversal.

*Id.* at 805–06 (emphasis in original) (citations omitted).

In this appeal, the district court determined that disclosure was necessary to a fair trial; specifically, necessary to defendants' effective cross-examination of the state's key witness. *Cf. State v. Baldizan,* 99 N.M. 106, 654 P.2d 559 (Ct.App.1982) (defendants entitled, under federal and state constitutions, to full and effective cross-examination of witnesses against them; right cannot be limited by rules of evidence). The district court entered findings in support of dismissal, documenting the extended proceedings required to resolve the discovery issue, the state's continued resistance to disclosure, and the delay in bringing the case to trial. The state did not directly attack these findings on appeal, instead only arguing that the circumstances did not support the dismissal.

In *Bartlett,* this court applied a three-prong test to determine what, if any, sanctions should be imposed where the evidence in the possession of the state was lost or destroyed. *See State v. Chouinard,* 96 N.M. 658, 634 P.2d 680 (1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982). The test requires a balancing of three considerations: (1) whether the state breached a duty or intentionally deprived defendant of the evidence; (2) whether the missing evidence was material to the case; and (3) whether the defendant was prejudiced by the absence of the evidence. *Id.* *Bartlett* and *Chouinard* differ from this case because there, the evidence was lost or destroyed, and in both cases, there was a trial record available to consider the importance of the evidence and the prejudicial effects of its absence. *Cf. State v. Fero,* 105 N.M. 339, 732 P.2d 866 (1987) (importance of lost evidence depends on many factors, including weight of other evidence adduced at trial).

The basic policy considerations, however, should be the same in any criminal case involving sanctions for the state's failure to disclose. In my judgment, all three considerations have been met by the state's inaction.

The trial court may dismiss pending charges as a sanction for a disclosure violation in an extreme case, particularly where the government has acted in bad

faith or where the violation results in irremediable harm or real prejudice to an accused, and prevents the possibility of a fair trial.

However, not every suppression of evidence requires dismissal of the charges and the remedies to be applied need only be those required to assure accused a fair trial. So, a delayed compliance, in particular circumstances, with a discovery requirement may not require a dismissal of the charges, particularly where the delay has not been prejudicial.

22A C.J.S. *Criminal Law* § 522, at 122 (1989) (footnotes omitted). I concede that New Mexico subscribes to the principle that dismissal is a sanction that should be used only in extreme circumstances. Nonetheless, our supreme court, only recently, in *Scoggins v. State*, 111 N.M. 122, 802 P.2d 631 (1990), affirmed the dismissal of criminal charges where the state inadvertently lost evidence.

In this appeal, at the eleventh hour, the Department's counsel, relying solely on the Wickard affidavit, argued at the hearing on defendants' last motion to dismiss, held in July 1989, that the information did not exist. Understandably, the district court determined that the Wickard affidavit was too little, too late. The affidavit was also inconsistent with earlier representations made to the district court, and with the existence of a list of cases from the Sixth Judicial District, which had already been provided to defendants by the prosecutor. The district court held that the affidavit failed to establish that the Department had acted in good faith and that it did not show good cause why the criminal charges should not be dismissed.

Based on the discussion that follows, I would hold that the trial court properly found that the state intentionally breached its duty to present *Brady* material. Before the filing of the Wickard affidavit, the state had never denied that reports on cases involving Bradley were in the Department's files. *Cf. State v. Bustamante*, 91 N.M. 772, 581 P.2d 460 (Ct.App.1978) (state not required to deliver to defendant report never in its actual possession). The state's

resistance to the district court's orders was not based on difficulty in producing the information, but on the court's asserted lack of authority to require its production. *Cf. State v. McGuire*, 110 N.M. 304, 795 P.2d 996 (1990) (state demonstrated difficulty inherent in obtaining information from other states' law enforcement agencies).

The state argues that it had no duty to provide the requested information, maintaining its duty to disclose is circumscribed by Rule 5–501, rather than by the district court's ruling on defendants' discovery request. The prosecutor's primary duty in every case is to see that a defendant has a fair trial and that justice is done. *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979).

The state also argues that it had no duty to produce the evidence under Rule 5–501(A)(3), because it was not "material to preparation of the defense." This argument does not address the district court's findings that the evidence was both relevant and necessary to effective cross examination. *See State v. Clark*, 105 N.M. 10, 727 P.2d 949 (Ct.App.1986) (evidence that would affect tactical trial decisions is material to preparation of the defense).

The importance of Bradley's testimony was not in dispute. He was paid by the Department to be an informant, and, in the course of his duties as a paid informant, he arranged and personally transacted the alleged drug deals with defendants. He was the prosecution's key witness. The information requested by defendants, relating to Bradley's previous informant activities for the Department, was crucial to the defense's ability to cross examine Bradley and test his credibility.

The Department finally responded to the repeated discovery orders to the effect that the information would be difficult to compile because the files were not indexed under the informant's name, but rather under the names of the defendants. Given the importance of defendants' rights at stake, I consider this response as inadequate. It was not disputed that Bradley knew the counties where he had worked, as well as the names of the officers under

whom he had worked. Although some of the officers had retired, the Department knew their identities as early as June of 1988, and could have used the time until the case's dismissal in July 1989 to contact the retired officers. None of the retired officers, according to the Wickard affidavit, were ever contacted despite "several unsuccessful attempts to contact [them] by phone[.]"

The sincerity of the Department's efforts to gather the information was properly called into question. Materials related to cases in the Sixth Judicial District, in which Bradley's identity had been disclosed, had already been provided to defendants by the prosecutor. Yet, the affidavit stated that no such information could be found. The Department's own ostensibly thorough search had failed to turn up these cases. Based on the Department's failure to turn up the cases found by the prosecutor, the prosecutor's own frustration with the failure to comply, and the fact that the Department never denied that the information existed, but only that it was not indexed to make retrieval easy, the district court did not err in holding that the affidavit did not establish that the Department had acted in good faith.

The taped transcript of the district court hearing in November 1988 contains the prosecutor's and French's statements of frustration with the Department's inaction. During the course of the hearing, it became obvious that the Department had not cooperated in any real manner with the district court in producing the evidence. The prosecutor spoke of what he considered an insincere attempt by the Department to comply with the district court's order. He even questioned the efficacy of French's letter to all the police departments throughout the state, noting that it was not addressed to the organizations he knew Bradley had worked with. The prosecutor stated that he first became concerned with the Department's failure to produce the requested information about five months after the preliminary hearing held in 1987. As a result, he asked French whether it was his understanding that the Department simply was not going to disclose the information.

French answered that that was his understanding. Additionally, the prosecutor said that he believed French had always known where to go for the information.

Yet, in spite of this overwhelming record, which indicates to my satisfaction that the Department was not acting in good faith over a period of many months, the majority focuses its attention on but a single affidavit filed on the eve of the district court's eventual dismissal of the criminal charges. I respectfully disagree with this "pick and choose" review of what facts the district court had to consider in addressing the state's sincerity in complying with the discovery order. I additionally disagree that the district court could not consider the prosecutor's comments regarding the Department's conduct to establish that the Department had acted in bad faith. Again, I believe that the majority's position to the contrary runs afoul of the "team" concept under *Wisniewski*.

In determining whether the failure to disclose was in bad faith, we should consider the district court's finding of bad faith in the Department's refusal to cooperate with the local authorities. *See State v. Wisniewski* (law enforcement authorities under same duty to disclose as prosecutor). Although the state did not specifically challenge this finding, it does contend that the Department and the local authorities did all that they could and more than required under Rule 5–501 to comply with the district court's orders. The state does not explain why the Department refused to respond to French's requests for months following the initial discovery order. Nor does it explain why, when given notice and opportunity to defend as required by our supreme court's order, the Department did not present a satisfactory explanation for its failure to produce the records. Once the supreme court entered its order in the prohibition proceeding, and the Department was given notice and an opportunity to be heard on the issue, the Department's continued refusal to respond could only be characterized as deliberate misconduct. The district court's findings of lack of good faith and deliberate refusal to respond to

the discovery order are supported by the record. This fact should weigh heavily against the state in determining whether the dismissal was appropriate.

The second prong of the *Bartlett* test requires a determination regarding the materiality of the suppressed evidence to the defense. Although the majority concedes that the information sought was material, I nevertheless consider it necessary to explore this question further in addressing the state's contention on appeal. Initially, I must note that the state never made an argument in the district court regarding the issue of materiality. However, the argument was made in the writ proceeding before our supreme court, apparently without success if one can interpret the supreme court's order as having decided the issue.

On the other hand, defendants have always argued that the information was relevant and material because "[i]nvestigation showed Bradley to be paid by the buy and to be an untrustworthy alcoholic and drug addict." These arguments directly addressed Bradley's credibility as a witness. At issue was whether Bradley had reason to fabricate the drug buys with defendants in order to curry favor with the Department and obtain money to support his alleged drug habits. The state has only asserted that the information was not material, without significant argument or any authority. Such a bald statement is insufficient to take the issue of materiality away from the district court, on whose shoulders the decision rests.

> When there is substantial room for doubt, the prosecution is not to decide for the court what is admissible and for the defense what is useful. 'The [Prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' *Berger v. United States,* 295 U.S. 78 [55 S.Ct. 629, 79 L.Ed. 1314] * * * * The prosecutor's unilateral decision not to disclose the evidence "invite[s] the risk of error." *Application of Kapatos,* S.D.N.Y., 1962, 208 F.Supp. 883, 888, quoted in *Jackson v. Wainright,* [390 F.2d 288, 298 (5th Cir.1968)].

*United States v. Hibler,* 463 F.2d 455, 459–60 (9th Cir.1972) (citing *Griffin v. United States,* 183 F.2d 990, 993 (D.C.Cir.1950)).

The state misconstrues *United States v. Heidecke,* 683 F.Supp. 1211 (N.D.Ill.1988), on which it relies in support of its contention that a defendant's discovery request of a list of persons and files is not relevant. In *Heidecke,* the court denied the defendant's discovery request for a list of government witnesses because a federal statute, 18 U.S.C. § 3500 (the Jencks Act), forbids it, absent appropriate circumstances. The court denied other discovery requests by the defendant, but only because the government had complied with previous orders.

> [T]he Government has or will disclose the criminal records of government witnesses, bad acts evidence relating to the government's witnesses, all promises of consideration or threats of prosecution relating to the government's witnesses, [and] *relevant information contained in the personnel or government files relating to government witnesses,* * * * and all other *Brady* and *Giglio* material relating to government witnesses. [Emphasis added.]

*Id.* at 1215 n. 5.

The information requested by defendants was material. "The right of cross-examination is a part of the constitutional right to be confronted with the witnesses against one." *State v. Sparks,* 85 N.M. 429, 430, 512 P.2d 1265, 1266 (Ct.App.1973) (upholding defendant's right to access of grand jury testimony of witness testifying at trial). In *State v. Quintana,* 86 N.M. 666, 526 P.2d 808 (Ct.App.1974), the court announced that one of the purposes of Rule 5–501 was to facilitate preparation for cross examination.

Other courts have upheld a defendant's right to obtain information held by the government regarding its witnesses in or-

der to impeach their credibility. *United States v. Hibler* ("This court has specifically held that undisclosed evidence may be 'material' on the issue of an accused's guilt or innocence even though it goes only to credibility." *Id.* at 460); *Carman v. State,* 604 P.2d 1076 (Alaska 1979) (the due process clause of the federal and state constitutions and the Rules of Criminal Procedure require that a prosecutor disclose information reasonably bearing on the credibility and bias of witnesses); *Sledge v. State,* 763 P.2d 1364 (Alaska Ct.App.1988) (evidence useful to impeach witness by demonstrating bias is material and should be disclosed to defendant); *State v. Lukezic,* 143 Ariz. 60, 691 P.2d 1088 (1984) (evidence of state's pre-trial assistance to prosecution witness in murder case including payment of car payments, arrangement of prescription drugs while in jail, and falsification of witness's presentence report should have been disclosed to the defense); *People v. Morris,* 46 Cal.3d 1, 249 Cal.Rptr. 119, 756 P.2d 843 (1988) (prosecutor's duty to disclose evidence bearing on its witness's credibility manifestly includes any promises or inducements that have been made to obtain the witness's testimony); *People v. Phillips,* 41 Cal.3d 29, 222 Cal.Rptr. 127, 711 P.2d 423 (1985) (prosecution has duty to disclose all substantial material evidence favorable to accused, including evidence relating to credibility of material witness); *State v. Wolf,* 7 Kan.App.2d 398, 643 P.2d 1101 (1982) (evidence materially affecting credibility of a key prosecution witness may be termed "exculpatory" within meaning of the "oversight" rule governing withholding of evidence by the prosecution).

"The test for materiality is whether the disclosure would enable the defense to significantly alter the quantum of proof in its favor. An item is material if it might help prepare a defense[.]" 9 *Federal Procedure,* L.Ed. § 22:676 (1982) (footnotes omitted). "If a defense request for information presents a substantial basis for claiming materiality, the prosecutor must respond either by furnishing the information or by submitting the issue to the trial judge." *Id.* at § 22:708 (footnote omitted). "Federal criminal convictions have been overturned due to the prosecution's failure to disclose to the defense * * * evidence bearing on the credibility of government witnesses." *Id.* at § 22:717 (footnote omitted). "Matters bearing on the competence of a witness to testify are of the gravest import, and the prosecutor may not disregard them or leave it to chance that his adversary will learn of them." *United States v. McFarland,* 371 F.2d 701, 705 (2d Cir.1966) (holding there was no error where defendant had essential information affecting government's witness's credibility for cross examination); *see also United States v. Poole,* 379 F.2d 645 (7th Cir.1967) (evidence of medical report would have gone to credibility of material witness had it been disclosed and therefore it was prejudicial error to withhold it).

The district court's unchallenged findings establish that the evidence was material to the determination of guilt or innocence. *See Chacon v. State,* 88 N.M. 198, 539 P.2d 218 (Ct.App.1975). However, unlike *Bartlett,* we do not have the benefit of a defense presented at trial and we must therefore consider the potential, rather than the actual, importance of the evidence. *See State v. Fero* (ability to cross examine witnesses to be considered in assessing importance of evidence).

We know from the record and the findings that Bradley's testimony formed the basis of the state's case against defendants. Defense counsel proposed to defend at trial on the bases that Bradley was motivated to fabricate the alleged drug transactions because he depended upon the income derived from each "bust" and that his credibility was questionable also because he was an addict. These circumstances establish a basis for determining that the undisclosed evidence had a potential for undercutting the state's case and substantially affecting the jury's view of Bradley's testimony. *See State v. Gillette,* 102 N.M. 695, 699 P.2d 626 (Ct.App.1985). Because Bradley's testimony was crucial to the state's case, evidence that would impact on the jury's determination of his credibility would have a significant impact on its determination of guilt or innocence and

the evidence was thus material. *See State v. Bartlett; State v. Bobbin,* 103 N.M. 375, 707 P.2d 1185 (Ct.App.1985) (discovery proper where information sought would be seriously considered by trier of fact in determining guilt or innocence); *cf. State v. Baldizan* (discussing the importance of evidence presented to attack a key witness's credibility).

The prejudice part of the test "contains at least two components: the importance of the missing evidence to defendant, and the strength of the other evidence of defendant's guilt." *State v. Bartlett,* 109 N.M. at 681, 789 P.2d at 629. We cannot review the "other evidence" in this appeal because defendants were not tried. It appears from the record and the findings, however, that Bradley's testimony provided virtually all of the state's evidence to prove the charges. Resolution of this issue therefore depends, as it did in *Bartlett,* on a determination of the importance of the evidence to defendants and on whether they could receive a fair trial without the evidence.

In many cases, the opportunity to fully cross-examine the state's witnesses, an opportunity foreclosed to defendants by the absence of the evidence in this case, has served to remove prejudice that would otherwise accrue from suppression. *See, e.g., State v. Manus; Chacon v. State; State v. Quintana.* In this appeal, however, where the effects of nondisclosure at the trial are impossible to predict, we have a pre-trial determination by the district court that defendants would be unable to effectively cross-examine the state's most crucial witness without the disclosure of the records. Based on that determination, which the state does not challenge, there was no abuse of discretion in the district court's order that the evidence be produced in order to avoid foreseeable prejudice to defendants' preparation of their defense.

I disagree with the state's argument that defendants could avoid prejudice in this case by obtaining the information they sought from Bradley himself. Based on his own attempts to comply with the order, French testified that interviewing Bradley would be of little or no value. The prosecutor and French represented to the district court that the information could be obtained only through the Department's records. *Cf. State v. Bustamante* (defendant given the same opportunity to obtain document, held by a third party, as the state).

The district court's unchallenged findings establish that, without the evidence, defendants could not effectively cross examine the state's most important witness. This is grave prejudice, severely impacting on defendants' ability to obtain a fair trial. I do not believe more needs to be established.

The district court determined that the requested information was necessary to allow defendants to conduct an adequate defense. The district court balanced its duty to assure that defendants had a fair trial, with an opportunity to fully cross examine the state's witnesses, against the lack of reasonable explanation for the state's nondisclosure. *Cf. United States v. Wicker* (district court made express findings as to reason for government's delay, prejudice to defendant, and feasibility of continuance). Ultimately, it is the district court's responsibility to assure that defendants have a fair trial. *Cf. In re Termination of Parental Rights of Ronald A.,* 110 N.M. 454, 797 P.2d 243 (1990) ("we note that in the last analysis it is the trial court that is responsible to afford due process to * * * litigants." *Id.* at 456, 797 P.2d at 243). In the district court, the state did not make a showing that the discovery orders were unduly burdensome, as it argues on appeal. I cannot conclude that the district court acted arbitrarily in determining that the interests of all parties in a fair trial outweighed the state's interest in continued resistance to the disclosure. *See State v. Manus.*

The cases cited by the majority (in which dismissal was held to be an inappropriate sanction) are distinguishable because, in those cases, either there was no prejudice shown, or the state was not found to have acted in bad faith, as the district court expressly found here. None of these cases represented that, in the face of eggregious

conduct, dismissal would be inappropriate. Rather, all of the cases relied on the abuse of discretion standard and held that the conduct did not meet the prerequisites for dismissal.

I did not uncover any case in which the failure to disclose extended over the lengthy period of time (eighteen months) that elapsed here, or involved such poor excuses, such as that the officers involved could not be reached after a few phone calls or that the information was indexed under a different format, as occurred here. A significant common factor in the cases relied on by the majority (in which dismissal was held to be an abuse of discretion) was the feasibility of rectifying any prejudice caused by the noncompliance by the granting of a continuance. In this appeal, the Department had given its final answer—that it would not produce. A continuance in this case would have been meaningless and obviously nonproductive. This is especially so, since the Department repeatedly took the position that the district court could not order it to produce the requested material.

For instance, in *United States v. Sarcinelli*, 667 F.2d 5 (5th Cir.1982), the time lapse between the discovery request, the government's failure to comply, and the sanction of exclusion of the evidence was only four and one half weeks. The circuit court reversed the trial court, holding that an extension would have been more appropriate under these circumstances. The court said:

> The magistrate's January 24 recommendation to the district court was not the product of a careful consideration of the factors we have cited that dictate the type of sanction, if any, that should be imposed when a party fails to comply with a rule 16 discovery order. The recommendation does not indicate the extent of the material prejudice, if any, the defendant may have suffered as a result of the prosecutor's failure to discover; it merely recites that the defense counsel were unable to proceed with the suppression hearing until they were given the requisite discovery. The recommendation does not indicate why this problem

could not have been solved by postponing the suppression hearing * * * * In short, the magistrate failed to justify the extreme sanctions she recommended to the district court.

*Id.* at 7 (footnote omitted). The case before us is entirely different. Here, the judge made specific findings of bad faith *and* prejudice to defendant. *See United States v. Wicker.*

*United States v. Gee*, 695 F.2d 1165 (9th Cir.1983), is likewise distinguishable. There, the defendant had equal access to the tapes requested.

> Gee makes no claim that the Government withheld or refused to divulge the existence of evidentiary materials to be used against him at trial. Defense counsel was not only aware of the existence of the tape in question but had listened to it on several occasions and had been provided with a copy for his own use.

*Id.* at 1167.

In addition, the court noted:

> The only additional relief to which Gee might have been entitled was a continuance * * * * But Gee did not request this relief. Nor did any of the defense counsel suggest to the court that additional defense preparation time would be helpful in any way. Under these circumstances there was no abuse of discretion in the manner in which the trial court dealt with the situation.

*Id.* at 1169. *Gee*'s holding was also limited to the facts.

> In reaching this conclusion [of refusing to suppress the tape's transcript] we do not intend to make a broad statement on the law of evidence production under Rule 16. We recognize that even in only slightly different factual situations, wrongful behavior by the Government in failing to comply fully with Rule 16 might well compel reversal. Such a case, however, is not before us now.

*Id.* I submit the facts of this appeal present such a case that would guide the court in *Gee* to a different result.

Similarly, *United States v. Euceda–Hernandez*, 768 F.2d 1307 (11th Cir.1985), is

distinguishable. There, too, the circuit court reversed the trial court's suppression of evidence where the prosecutor's late discovery was not deliberate, and a continuance would have cured any prejudice defendants may have suffered.

Finally, in 8 J. Moore, *Moore's Federal Practice*, § 16.03[3] (2d ed. 1990), also cited by the majority, the one case relied on, *Harris v. Young*, 607 F.2d 1081 (4th Cir. 1979), is distinguishable on the facts because the defense attorney was found to be as much, if not more, at fault than the prosecutor in failing to obtain the evidence. Also, the noncompliance in *Harris* was not intentional. A continuance there would have cured the problem because it would have given the defense the opportunity to examine the evidence, which was available to him, after a short recess in the trial. Additionally, there was no indication in *Harris* that the trial court considered less drastic alternatives before declaring the mistrial.

CONCLUSION

In summary, although I agree with the majority's premise that the district court should fashion the least severe sanction that will accomplish the desired results, I disagree that the delay caused by the state did not warrant dismissal. I believe that, at the time the district court dismissed the criminal charges, sufficient time had elapsed for the state to comply. At that point, the district court reasonably concluded that nothing short of dismissal would result in a change of the Department's noncooperative attitude. Exasperated by the foot-dragging of the state (which included all agencies working as a part of the prosecutorial team), the district court was justified in losing its patience.

I thus dissent based on a holding that the district court did not abuse its discretion in applying the extreme sanction of dismissal in lieu of lesser sanctions. I would therefore affirm the district court's order of dismissal.