1998 ND 110

**Donald LUEBKE, Petitioner and Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

**Civil No. 970337.**

Supreme Court of North Dakota.

June 4, 1998.

Schoppert Law Firm, Minot, for petitioner and appellant; argued by Thomas K. Schoppert.

Andrew Moraghan (argued), Assistant Attorney General, Bismarck, for respondent and appellee.

MESCHKE, Justice.

[¶ 1] Donald Luebke appealed a judgment affirming the Department of Transportation's suspension of his driving license for 365 days for driving a motor vehicle under the influence of alcohol. Luebke claims he was deprived of his right under NDCC 39–20–02 to an independent blood test. We reverse and remand to the agency for further proceedings.

[¶ 2] At 7:44 p.m. on May 3, 1997, while patrolling U.S. Highway 85, Trooper Bonness of the Highway Patrol stopped Luebke for speeding. Luebke admitted he "had had a few in Alexander," and Bonness did field sobriety tests. Luebke passed the HGN and one-leg-stand tests, but failed the walk-and-turn test. After Bonness gave Luebke the implied consent advisory, Luebke agreed to an Alco–Sensor breath test, but he failed it. Bonness arrested Luebke for driving under the influence of alcohol. Bonness again read the implied consent advisory to Luebke and asked Luebke to take an Intoxilyzer test. Luebke asked to speak to an attorney, and Bonness took him to the Watford City Law Enforcement Center. There, Bonness gave Luebke a telephone and telephone book. Luebke called his parents and made several unsuccessful attempts to reach an attorney. Between phone calls, McKenzie County Sheriff's Deputy Fulwider booked Luebke.

[¶ 3] Bonness told Luebke at 9:24 p.m. to make a decision on the Intoxilyzer test. Luebke agreed to the test, but said he had eaten a piece of beef jerky ten minutes earlier. Because neither Bonness nor the deputy had seen Luebke eat anything and they did not smell jerky on Luebke's breath, Bonness gave Luebke the test. At 9:43 p.m., within two hours after he had been stopped, the test

showed Luebke had a blood alcohol concentration of .11 percent.

[¶ 4] Bonness issued Luebke a Report and Notice, placed him in custody of the Sheriff's office, and left the Center. Moments later, a radio dispatcher contacted Bonness, who was still in the Center parking lot talking to Deputy Fulwider. The dispatcher told Bonness that Luebke had requested an independent blood test. Bonness consulted his North Dakota Highway Patrol Policy Manual:

Additional Test Requested by the Person Arrested

1. NDHP officers will assist the defendant in obtaining a second test after the officer completes his/her test. If a second test is requested by the defendant, the following procedure will be utilized:

    a. The officer will transport the defendant to the testing site (hospital), if another procedure in that county is not already set up to facilitate the second test.

    b. The officer will transport only if the travel time is not more than 30 miles one way; and, only when the defendant is still in the custody of the officer; and, when the officer has not lost visual contact with the individual.

    c. If transportation is provided and the second test is taken, the officer will witness the test and inform the individual the second test is to be paid for by him/her. In addition, the responsibility for mailing, custody of the sample, and obtaining reports or results of the test will also be borne by the defendant.

Bonness then informed the dispatcher he would not transport Luebke for a blood test, and if Luebke wanted an independent test, "he would have to get it on his own."

[¶ 5] At the administrative hearing, Fulwider testified he had heard both Luebke's request and Bonness' response, but he did not discuss the request with Bonness or follow up on it himself. No independent test was performed on Luebke.

[¶ 6] The hearing officer made these pertinent findings of fact and conclusions of law:

... At 10:06 p.m., Trooper Bonness was contacted by McKenzie County dispatch, notifying Trooper Bonness that [Luebke] requested his own independent blood test. Trooper Bonness was in his patrol car in the parking lot and informed dispatch that he would not be coming back to assist [Luebke]. There is no evidence regarding whether [Luebke] further requested jail personnel to assist with the test. Trooper Bonness did not hinder [Luebke's] attempts to obtain an independent test.

... Trooper Bonness had reasonable, articulable suspicion to stop [Luebke's] vehicle and reasonable grounds to believe he had been driving under the influence. Trooper Bonness placed [Luebke] under arrest. [Luebke] was given a fairly administered chemical test and was tested according to statute. Test results indicate [Luebke's] alcohol concentration to have been .11 percent.

The hearing officer suspended Luebke's driving license for 365 days.

[¶ 7] Luebke appealed the suspension, alleging he had placed something in his mouth within 20 minutes before the test, he should have been allowed to confront the state's test, and he was deprived of an opportunity to take an independent test. The district court affirmed the suspension of Luebke's driving license. Luebke appealed.

[¶ 8] The Administrative Agencies Practices Act, NDCC ch. 28–32, governs review of administrative license suspensions. *Krehlik v. Moore*, 542 N.W.2d 443, 445 (N.D. 1996). Our review is confined to the record before the agency, and we do not review the decision of the district court. *Samdahl v. North Dakota Dep't of Transp. Dir.*, 518 N.W.2d 714, 716 (N.D.1994). NDCC 28–32–19 directs us to affirm an agency's order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. Provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

Because the hearing officer failed to make findings on whether Luebke had arranged an independent test, we reverse and remand.

[¶ 9] After his arrest, Luebke had the right, under NDCC 39-20-02 (part), to obtain an independent chemical test at his own expense:

> The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of the person's choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer with all costs of an additional test or tests to be the sole responsibility of the person charged.

As we explained in *State v. Lorenzen*, 401 N.W.2d 508, 509 (N.D.1987), an arrested driver's request for an independent test must be clear and unambiguous. Here, Luebke's clear and unambiguous request for an independent test was relayed to Bonness, but not until after Bonness had gone outside the Law Enforcement Center.

[¶ 10] We have discussed before what an officer must do when a driver clearly and unambiguously requests an independent test. *State v. Messner*, 481 N.W.2d 236 (N.D.1992). In *Messner* at 239 (citations omitted), we discussed the ruling of the North Dakota Court of Appeals in *State v. Dressler*, 433 N.W.2d 549, 550-51 (N.D.Ct.App.1988), and explained:

> [A] person arrested for driving under the influence of alcohol must be afforded a reasonable opportunity to secure an additional test by a person of his own choosing if he requests one.... "[T]he meaning of a 'reasonable opportunity' to obtain an ex-

amination may vary depending on the circumstances."

Law enforcement officers need not assist people in obtaining independent tests or even advise them of the right to an additional test. Law enforcement officers, however, "must not prevent or hinder an individual's timely, reasonable attempts to obtain an independent examination." Law enforcement officers must afford a reasonable opportunity and a motorist's request for an additional test by a person of his own choosing must be a reasonable one. "What may be reasonable in one locality may be unreasonable in another."

In *Messner* at 240 (emphasis ours), we emphasized an arrested driver's right to an independent test "is actually an arrested motorist's right to be free of police interference when obtaining another test *by his own efforts* and at his own expense."

[¶ 11] Generally, law officers are not required to transport the driver for the test, but "they need only allow an accused access to a telephone." *Id.* Luebke was given unrestricted telephone access for some time. According to Bonness, Luebke arrived at the Law Enforcement Center between 8:20 and 8:25 p.m. Then, until 9:24 p.m. when he took the Intoxilyzer test, Luebke had free access to a telephone and made several phone calls. During that time, he phoned his parents and made several unsuccessful attempts to reach an attorney.[1]

[¶ 12] "Whether the accused has made a reasonable request for an independent test and whether police have interfered by denying the accused a reasonable opportunity to obtain that test depend on the totality of the circumstances." *Messner*, 481 N.W.2d at 240. Luebke claims Bonness hindered or prevented his reasonable attempt to have an independent test by refusing to transport him to the local hospital.

[¶ 13] Although we recognized in *Messner* a driver's opportunity to obtain an independent test will often be reasonably satisfied by granting him telephone access,

---

1. There is no other evidence about the phone calls Luebke made. Luebke was not present at the administrative hearing, was in prison on an unrelated charge, and did not testify telephonically.

we also explained telephone access will not, in all circumstances, "satisfy the minimal requirements of reasonableness." *Messner* at 240. Before law officers must do more than allow reasonable telephone access for a driver to arrange an independent test, there must be something more than the driver's "mere request for another test." *Id.* Quoting *Harper v. State,* 164 Ga.App. 230, 296 S.E.2d 782, 783 (1982), we explained, before law officers must do more than allow telephone access, a driver must show

> he had made arrangements [for a test] with a qualified person of his own choosing, that the test would be made if he came to the hospital, that he so informed the personnel at the jail where he was under arrest. . . .

*Messner,* 481 N.W.2d at 240. Here, the Department contends Bonness did not have a duty to transport Luebke to the local hospital for an independent test because Luebke had not made those arrangements and had not informed Bonness the test would be performed if he came to the hospital.

■ [¶ 14] At the administrative hearing, however, Bonness took the position Luebke was not in his custody at the time of his request and, therefore, he had no duty to transport Luebke. Deputy Fulwider claimed the Sheriff's office had no duty to transport Luebke because the applicable policies placed that duty on the arresting officer, in this case, Bonness. But the effect of the shift of custody from the arresting officer to other officers has no effect on our review in this case. The duty not to hinder or prevent a driver's reasonable attempts to have an independent test applies to all custodial officers, not to the arresting officer only.

[¶ 15] Luebke argued he did not need to complete his own arrangement with the hospital because the Sheriff's office had a standing arrangement there. Deputy Fulwider testified the Sheriff's office does not call ahead to make arrangements for an official blood test to be performed. According to Fulwider, a lab technician for the hospital is on call twenty-four hours a day and is called to draw blood when a driver and a deputy arrive at the hospital. No prior arrangements are made before they arrive at the hospital. There is no evidence the hospital would not have similarly drawn blood to test a private patient.

[¶ 16] Luebke contends he thus had no need to make his own arrangement before his arrival at the hospital. He contends the hospital's standing procedure included him, even though he was requesting an independent test at his own expense. *See Messner,* 481 N.W.2d at 240. Although Fulwider testified about the Sheriff office's usual procedure, the evidence is unclear whether a like procedure was in effect for a test to be performed for an individual, and not for law officers. The hearing officer did not make a finding about whether Luebke needed to do more to make his own arrangement for an independent test or whether, without his own prior arrangement, he would have been able to have his own test upon arrival at the hospital.

■ [¶ 17] Because no findings were made on whether Luebke sufficiently arranged his own independent test, we are unable to review whether either Bonness or the Sheriff's office hindered or deprived Luebke of an independent test. Without those key findings, we cannot conclude, as we did in *Lock v. Moore,* 541 N.W.2d 84, 88 (N.D.1995), that Luebke was given a reasonable opportunity to obtain an independent test but "simply failed to take full advantage of his opportunity." Therefore, we reverse with instructions to remand to the agency for findings on whether Luebke had made sufficient arrangements for an independent test at the hospital.

[¶ 18] We reverse the judgment of the district court and direct a remand of this case to the agency for further consideration and findings.

[¶ 19] VANDE WALLE, C.J., and MARING and NEUMANN, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 20] Because there is no evidence Luebke made any arrangements for an independent test, I would affirm.

[¶ 21] The majority concludes, at ¶ 17, a remand is necessary for the agency to make

"findings on whether Luebke had made sufficient arrangements for an independent test at the hospital."

[¶ 22] The testimony elicited at the hearing showed only that the Sheriff's department, if it chooses to give a blood test instead of a breath test, may have a test taken at any time of day, by going to the hospital and having a nurse call a lab technician to come in and draw blood. There were no questions asked at the hearing regarding whether this arrangement might apply to independent requests for tests. There were also no questions asked about the hospital's payment policy or other issues for private independent tests, as opposed to tests for the Sheriff's department. Even assuming, however, the standing arrangement might have applied to Luebke, there was no evidence Luebke tried to call the hospital, was otherwise aware of this policy, or made any arrangements for a test. *Compare Lock v. Moore*, 541 N.W.2d 84, 86, 88 (N.D.1995) (holding police officer was not required to volunteer knowledge that local doctor had in the past come to the prison and performed independent tests and concluding Lock should have used access to phone to make arrangements for a test or at least asked officer about potential for independent test).

[¶ 23] Under *Messner*, and the various authorities it cites, once law enforcement has allowed access to a telephone, it is up to the accused to show he made arrangements with a qualified person for a test, before law enforcement has a further duty to accommodate an accused's request for an independent test. *State v. Messner*, 481 N.W.2d 236, 240 (N.D.1992).

[¶ 24] There is no evidence Luebke made any arrangements for an independent test. There is no evidence Luebke was aware of the Sheriff's department's arrangements for its tests. There is no evidence the Sheriff's department's arrangements for its tests would have applied to Luebke. And even if there was, there is no evidence either Luebke or relevant law enforcement were aware of it. When there is no evidence, there is no need to remand for further findings. *See In re Annexation of Part of Don-*

*nybrook Pub. Sch. Dist. No. 24*, 365 N.W.2d 514, 524 (N.D.1985).

[¶ 25] I therefore dissent.

[¶ 26] Dale V. Sandstrom