# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __January 14, 2015_____

**NO. 32,872**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**STEFAN CHAKERIAN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector Balderas, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellee

D. Eric Hannum
Albuquerque, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

{1}    The question presented in this case is whether a defendant who was provided with a telephone book and access to a telephone for a period of twenty to thirty minutes in the early hours of the morning, was given a reasonable opportunity to arrange for an independent chemical test pursuant to the Implied Consent Act (the Act), NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2007).  We conclude that Defendant was not afforded his statutory right under the Act.  We therefore reverse the judgment of the district court and remand to the metropolitan court for further proceedings.

**BACKGROUND**

{2}    At the bench trial in the metropolitan court before Judge Benavidez (trial court), the following facts were established.  Albuquerque Police Officer Mark Aragon initiated a traffic stop of Defendant's vehicle after his dash-mounted radar indicated Defendant was traveling forty-seven miles per hour in a thirty-five mile-per-hour zone.  Upon coming into contact with Defendant, Officer Aragon observed that Defendant had bloodshot, watery eyes and emitted an odor of alcohol. He asked Defendant if he had been drinking, and Defendant responded "not much."

After administering field sobriety tests, Officer Aragon concluded that Defendant was driving while under the influence of alcohol (DWI) and arrested him.

{3}     Officer Aragon transported Defendant to a police substation to administer a breath alcohol (BAC) test.  Before beginning the test, Officer Aragon advised Defendant of his rights and obligations under the Act.  This included Defendant's right to be given an opportunity to arrange for a qualified person of his own choosing to perform a chemical test of his blood for alcohol content.  *See* § 66-8-109(B) (directing that the law enforcement officer shall advise the person of his right to be given an opportunity to arrange for a qualified person "of his own choosing" to perform a chemical test of his blood).  Because the machine at the substation delivered an error message when Officer Aragon attempted to obtain a breath sample from Defendant, he transported Defendant to the Prisoner Transport Center to administer a breath test.  The BAC test measured two samples of Defendant's breath alcohol content at .12 and .11 at 3:37 and 3:40 a.m., respectively.

{4}     At the Prisoner Transport Center, Officer Aragon again advised Defendant of his right to arrange for an independent test of his blood, and Defendant requested that he be afforded that right.  Officer Aragon thereupon took Defendant to a table with a telephone and Yellow Pages phonebook.  Defendant testified, "I don't actually know what to look up to get a blood test taken. There was nothing under

2

phlebotomists . . . I had the phone and a phonebook and I couldn't find any numbers that could actually—I mean, I didn't know what to look up." Defendant wrote phone numbers down but he did not use any of them because, although he wanted a blood test, he felt too much time had already passed. Officer Aragon believed they were at the table for twenty to thirty minutes before the medical screening officer arrived, and Defendant was then booked into custody.

{5} Defendant objected to the admission of the BAC test results, arguing that he was not given a reasonable opportunity to arrange for an independent chemical test of his blood for alcohol as required by the Act. The objection was overruled, and the BAC test results were admitted into evidence. However, the trial court expressed its reservation in having admitted the test results. Before announcing the verdict, the trial court said:

> One of the most troubling things with respect to this case is whether or not Defendant had an opportunity to take another breath, another blood test at his request. From what's been presented to me today, I mean, I just don't see, the way things happened, that he was really afforded an opportunity to have a blood test given to him.

Based on the test results admitted into evidence, the trial court found Defendant guilty of per se DWI and speeding. *See* § 66-8-102(C)(1) (providing that it is per se unlawful to drive a vehicle if the person has an alcohol concentration of .08 or more

in the person's blood or breath within three hours of driving the vehicle). The verdict notwithstanding, the trial court added:

> I have really, some really big issues with the fact that I don't know that he was actually allowed to take another test that was going to be meaningful or not. I mean, I'm just not seeing it, given what was presented to me. That may be an issue that defense might want to pursue, you know, on appeal. He testified that he was just given a book and a phone. I don't know if that is meaningful or not. His actions, and he testified also, you know, 'I didn't object strenuously,' like I had stated earlier. I think he really did want to get the test done. I don't know that he had a real opportunity to get it done.

{6} Defendant appealed the DWI and speeding convictions to the district court. The district court affirmed the DWI conviction on a basis not raised in the trial court or argued by either party in the appeal. In its memorandum opinion, the district court asserted that even if Defendant had obtained an independent BAC test of his blood, the test results "would have had to register nearly a third lower" than the breath test results of .12 and .11 obtained by Officer Aragon. Further, said the district court, because Defendant presented no evidence that an independent test "would have demonstrated an error of such magnitude[,]" it concluded that Defendant "failed to establish prejudice and, regardless of whether the officer afforded [Defendant] a reasonable opportunity to obtain an independent test, suppression was not required." Defendant appeals from the decision of the district court, and for the reasons stated below, we reverse.

4

**DISCUSSION**

{7}     Defendant raises two issues on appeal.  First, Defendant contends he was not given a reasonable opportunity to arrange for an independent test of his blood as required by Section 66-8-109(B) of the Act.  Second, Defendant asserts that the district court erred in basing its decision on an issue that was not considered by the trial court or raised on appeal.  In response, the State argues that no error was committed in the trial court or on appeal.  In addition, the State contends that Defendant's appeal to us from the district court—his second appeal—is not an appeal as a matter of right over which we must exercise jurisdiction.  Since briefing concluded in this case, we issued our opinion in *State v. Carroll*, 2013-NMCA-__, __ P.3d __ (No. 32,909, Oct. 21, 2013), rejecting the State's jurisdictional challenge. We therefore do not address this matter further and proceed to address Defendant's arguments.

**The Right to Arrange for an Independent Chemical Test**

{8}     The first issue we address is the right of a motorist arrested for DWI to arrange for an independent chemical test of his blood for alcohol under Section 66-8-109(B), and whether, under the circumstances, Defendant was afforded that right.

**Standard of Review**

{9}     Prior to analyzing whether Defendant was afforded his statutory right under Section 66-8-109(B), we clarify our standard of review.  Defendant asserts that the trial court's statement quoted above before admitting the breath test results into evidence ("I just don't see, the way this happened, that he was really afforded an opportunity to have a blood test given to him.") constitutes a finding of fact. Therefore, Defendant argues that our review is limited to whether this "finding" is supported by substantial evidence. On the other hand, the State contends that because the breath test results were admitted into evidence, we are limited to reviewing whether the trial court abused its discretion in admitting the test results.  We reject both assertions.

{10}     Historical facts, as found by the fact finder, are reviewed under the substantial evidence standard, whereas interpreting or applying the law to the facts is reviewed de novo.  *See State v. King*, 2012-NMCA-119, ¶ 13, 291 P.3d 160 (stating that statutory review of the Act is under a de novo standard); *State v. Vaughn*, 2005-NMCA-076, ¶ 33, 137 N.M. 674, 114 P.3d 354 (interpreting provisions of the Act). Here, the historical facts set forth above are not disputed, and we construe the comments of the trial court as questioning whether, under the facts, the statute was

6

complied with by Officer Aragon. We therefore proceed to determine de novo whether, under those facts, Defendant was deprived of his statutory right.

**Analysis**

{11} *State v. Jones*, 1998-NMCA-076, ¶ 24, 125 N.M. 556, 964 P.2d 117, is the only case examining the meaning of Section 66-8-109(B). Therein, we held that the statute "entitles arrestees to a reasonable opportunity to contact a qualified person of their choosing who may be able to perform the test." *Jones*, 1998-NMCA-076, ¶ 24. We further concluded that the statute entitles "those arrested on charges of DWI to choose who will perform the independent chemical test upon them by drawing the blood, as well as to choose who analyzes the blood sample." *Id.* ¶ 23.

{12} In *Jones*, the arresting officer read the defendant the Act advisory and administered two breath tests. *Id.* ¶ 4. Once the tests were completed, the defendant requested an independent blood test, and specified that he wanted his own doctor, not a blood technician on contract with the police department, to draw his blood. *Id.* ¶ 5. However, the officer did not allow the defendant to use a telephone, nor did the officer make any calls on the defendant's behalf. *Id.* Under these circumstances, we concluded it was clear that the defendant was denied a reasonable opportunity to contact his doctor. *Id.* ¶ 25. Because the statutory violation was so clear in *Jones*, it was not necessary for us to decide whether anything more than access to a telephone

7

was required to afford a DWI arrestee "a reasonable opportunity to contact someone of his choosing to perform the blood test upon him." *Id.*

{13}     Unlike *Jones*, this case requires us to address whether providing access to a telephone and Yellow Pages phonebook provided Defendant "a reasonable opportunity to contact someone of his own choosing to perform the blood test upon him." To guide our resolution of this question, we first examine the structure of the Act and the rights and duties imposed by the Legislature in the Act.

{14}     The purpose of the Act is to deter DWI and to aid in discovering and removing an intoxicated driver from the highway. *See McKay v. Davis*, 1982-NMSC-122, ¶ 4, 99 N.M. 29, 653 P.2d 860. To this end, the Act declares that any person who operates a motor vehicle "shall be deemed to have given consent" to a chemical test of his breath or blood "for the purpose of determining the drug or alcohol content of his blood" if the person is arrested for DWI. Section 66-8-107(A). The test "shall be administered at the direction of a law enforcement officer" who has reasonable grounds to believe the person is DWI. Section 66-8-107(B). While the driver may refuse to submit to a test, his driver's license may be revoked and he subjects himself to an enhanced charge of aggravated DWI for refusing to submit to the test. Sections 66-8-111 (A), (B); 66-8-112; and 66-8-102(D)(3). When the test shows that the breath or blood of the driver contains an alcohol concentration of eight one

8

hundredths or more (or four one hundredths or more if the person is driving a commercial motor vehicle), "[t]he arresting officer shall charge the person tested" with DWI. Section 66-8-110(C). The test results are admissible in evidence in any civil or criminal action arising out of the acts alleged to have been committed by the person while driving a motor vehicle under the influence of intoxicating liquor or drugs. Section 66-8-110(A). Finally, on the basis of the test results, the Act creates presumptions about whether the driver is DWI. Section 66-8-110(B).

{15} The alcohol content of the driver's blood is the critical evidence in DWI prosecutions such as the one before us here. A driver has a right to challenge the reliability and results of a test for alcohol at trial. *King*, 2012-NMCA-119, ¶ 16; *State v. Chavez*, 2009-NMCA-089, ¶ 9, 146 N.M. 729, 214 P.3d 794; *State v. Martinez*, 2007-NMSC-025, ¶ 24, 141 N.M. 713, 160 P.3d 894. However, if the driver's blood is not preserved for testing, critical evidence to make such a challenge is irretrievably lost, and a question arises as to whether due process was violated. *See Montoya v. Metro. Court*, 1982-NMSC-092, ¶¶ 2-7, 98 N.M. 616, 651 P.2d 1260 (addressing whether the State is constitutionally required to preserve what remains of a breath alcohol sample for independent testing by persons charged with DWI), *abrogated on other grounds by State v. Alberico*, 1993-NMSC-047, ¶ 40, 116 N.M. 156, 861 P.2d 192. In addition, this critical evidence is subject to constant changes over time. As

9

the expert in *State v. Christmas*, 2002-NMCA-020, ¶ 26, 131 N.M. 591, 40 P.3d 1035 explained:

> [W]hen alcohol is ingested, it travels first to the stomach, and is eventually absorbed into the bloodstream. During this first stage, or 'absorption stage,' an individual's BAC continues to rise. However, absorption rates can vary tremendously, based on any number of anatomical, physiological, and situational factors. At some point, the alcohol level in a person's blood or breath reaches a second stage, or 'peak level.' After the BAC reaches a peak, an individual enters the so-called 'elimination phase,' as alcohol is metabolized by the body and the BAC level begins to decline. . . . [T]hese three phases can overlap, because the body begins the process of elimination even as it may still be absorbing alcohol . . . . [T]his phenomena [can be described] as an 'alcohol time response curve,' that can vary greatly with the individual and the situation. . . . [I]t is not always possible to tell whether an individual's BAC was on the rise, at its peak, or on the decline at some earlier point in time, like the time of driving[.]

{16} In response to these concerns, at least one state has concluded that the constitutional due process right to obtain exculpatory evidence includes a right to obtain an alcohol test independent of the test administered by the arresting officer and that this includes being informed of that constitutional right at the time of the arrest. *State v. Minkoff*, 2002 MT 29, ¶¶ 9-10, 308 Mont. 248, 42 P.3d 223; *State v. Strand*, 951 P.2d 552, 554-55 (Mont. 1997), *overruled on other grounds by Minkoff*, 2002 MT 29, ¶ 23; *State v. Swanson*, 722 P.2d 1155, 1157-58 (Mont. 1986).

{17} It is within this factual and legal context that the Legislature adopted Section 66-8-109(B). The statute directs:

10

The person tested shall be advised by the law enforcement officer of the person's right to be given an opportunity to arrange for a physician, licensed professional or practical nurse or laboratory technician or technologist who is employed by a hospital or physician of his own choosing to perform a chemical test in addition to any test performed at the direction of a law enforcement officer.

{18} Thus, by enacting Section 66-8-109(B), our Legislature has crafted a careful balance. On the one hand, the Legislature has provided the State with strong tools for deterring and prosecuting DWI offenses, and on the other hand, the Legislature has protected the rights of citizens by requiring the State to provide an arrestee with a meaningful opportunity to reasonably preserve and test the critical and potentially exonerating evidence. As explained in *Fugere v. Taxation & Revenue Dep't*, 1995-NMCA-040, ¶ 21, 120 N.M. 29, 897 P.2d 216, a person accused of DWI who takes the test ordered by the arresting officer then has a right to "take an additional test of his own choosing, and to thereafter challenge any disparate results." *Id.* Section 66-8-109(B) affords fundamental fairness and at the same time, constitutional due process. In fact the Legislature has determined that the right is so fundamental and important, that when it is exercised, "the cost of that test shall be paid by the law enforcement agency[.]" Section 66-8-109(E). We now proceed to determine whether Defendant was afforded his statutory right.

{19} The statute grants arrestees a protected right in the form of an "opportunity" to arrange for an independent blood test in order to challenge the critical BAC evidence. The word "opportunity" means in part "a combination of circumstances, time, and place suitable or favorable for a particular activity or action." Webster's Third New Int'l Dictionary 1583 (unabridged ed. 2002). Thus, an opportunity "indicates a combination of circumstances facilitating a certain action or inviting a certain decision." Webster's Third New Int'l Dictionary, *supra*, at 1583. In *Jones*, we added that the statute requires "that the arrestee will be given a *reasonable opportunity* to arrange for an additional test." 1998-NMCA-076, ¶ 24 (emphasis added). We therefore conclude that the plain meaning of the statue imposes a duty upon the State, a duty that requires law enforcement to meaningfully cooperate with an arrestee's express desire to arrange for an independent blood test. The level of meaningful cooperation required by law enforcement will depend upon the facts and circumstances in each particular case.

{20} Doing nothing more than providing access to a Yellow Pages telephone book and telephone in the early morning hours fails to rise to the level of meaningful cooperation required by Section 66-8-109(B). A telephone book is simply a list of names and telephone numbers of telephone subscribers who allow their number to be published. In this regard, a telephone book is over-inclusive in that most—if not

12

all—of the numbers listed do not relate to a person who conducts chemical tests of blood for alcohol. Further, while a Yellow Pages telephone book has categories of goods and services under which names and telephone numbers are listed, one will search in vain for the categories of a "physician, licensed professional or practical nurse or laboratory technician or technologist who is employed by a hospital or physician" who is authorized to draw blood or test blood for alcoholic content. In this sense, a telephone book is under-inclusive.

{21} The State failed to present any evidence or argument demonstrating that providing Defendant with the Yellow Pages telephone book and telephone was reasonably likely to result in Defendant being able to arrange for an independent chemical test. The only evidence we have is Defendant's testimony that he tried to find someone listed in the phone book who could take a sample of his blood, but he was not able to do so—"I didn't know what to look up." The fact that some percentage of citizens arrested for DWI might be able to successfully arrange for an independent blood test in the early morning hours by using the Yellow Pages and a telephone is not determinative. The critical issue is whether an ordinary person under arrest for being impaired can reasonably arrange for an independent blood test in the early morning hours by simply using the Yellow Pages and a telephone. The "reasonable person standard" is employed in many other contexts, and we see no

reason why it should not apply in this case as well. *See Cochrell v. Mitchell*, 2003-NMCA-094, ¶ 21, 134 N.M. 180, 75 P.3d 396 (interpreting statutory notice requirement under a reasonable person standard); *Bogan v. Sandoval Cnty. Planning & Zoning Comm'n*, 1994-NMCA-157, ¶ 24, 119 N.M. 334, 890 P.2d 395 (concluding that compliance with an ordinance requiring notice is measured by what the average citizen reading the notice would understand).

{22} Under the circumstances, Officer Aragon only provided Defendant with a mere possibility of being able to arrange for an independent test, and more than that is required by the plain language of the statute—the opportunity provided must be meaningful. The State's duty to participate and cooperate with an arrestee's opportunity to obtain an independent blood test cannot be so minimal that it reduces an ordinary citizen's protected right to the level of being illusory. *See City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 23, 141 N.M. 686, 160 P.3d 595 ("We . . . do not give effect to legislative intent by reading a statute in a way that would render it meaningless."); *Gray v. Sanchez*, 1974-NMSC-011, 86 N.M. 146, 520 P.2d 1091 (Montoya, J., specially concurring) (observing that the manner in which a statute is executed cannot result in rendering the statutory right illusory). Objectively, Officer Aragon's actions in this case were not sufficient to provide an ordinary person with the means to reasonably obtain an independent test of his or her

14

blood to determine its alcohol content as required by Section 66-8-109(B). *State v. Herrera*, 1974-NMSC-037, ¶ 6, 86 N.M. 224, 522 P.2d 76 ("We will not construe statues to achieve an absurd result or to defeat the intended object of the legislature.").

{23} We therefore hold that Defendant was not afforded his statutory right of a reasonable opportunity to arrange for an independent chemical blood test of his own choosing. We acknowledge that other states have come to a different conclusion in interpreting their own statute. *See Schulz v. Comm'r of Pub. Safety*, 760 N.W.2d 331, 334 (Minn. Ct. App. 2009) ("Other than providing a telephone, an officer has no obligation to assist a driver to obtain an additional test."); *State v. Dake*, 529 N.W.2d 46, 49 (Neb. 1995) (finding that while "the police cannot hamper a motorist's efforts to obtain independent testing, they are under no duty to assist in obtaining such testing beyond allowing telephone calls to secure the test"). However, we are not persuaded by their reasoning in light of how our Legislature has chosen to balance the interests at stake while maintaining fundamental fairness and affording due process.

**Prejudice From the Statutory Violation and Sanctions**

{24} We now address Defendant's second argument, that the district court erred in affirming the DWI conviction on grounds that Defendant failed to demonstrate

prejudice, a basis not raised in the trial court or argued by either party on appeal to the district court. In an on-the-record appeal from the metropolitan court the district court is the equivalent of an appellate court. *See State v. Trujillo*, 1999-NMCA-003, ¶ 4, 126 N.M. 603, 973 P.2d 855 ("For on-record appeals the district court acts as a typical appellate court, with the district judge simply reviewing the record of the metropolitan court trial for legal error."). Thus, Defendant asserts, the district court improperly decided Defendant was not prejudiced, because it was not an issue raised by either party in the trial court or on appeal to the district court. We agree with Defendant. *See State v. Jade G.*, 2007-NMSC-010, ¶ 24, 141 N.M. 284, 154 P.3d 659 (acknowledging that as a general rule, propositions of law not raised in the trial court cannot be considered sua sponte by an appellate court).

{25} This case illustrates one of the reasons why, as a general rule, issues not raised at trial should not be considered sua sponte on appeal. The trial court found Defendant guilty of per se DWI under Section 66-8-102(C)(1) (providing that it is per se unlawful to drive a vehicle if the person has an alcohol concentration of .08 or more in the person's blood or breath within three hours of driving the vehicle). In affirming the conviction on appeal, the district court noted that Defendant's BAC test results were .12 and .11. Therefore, reasoned the district court, to avoid a per se conviction, Defendant's independent tests "would have had to register nearly a third

lower[,]" and Defendant "presented no evidence an independent test would have demonstrated an error of such magnitude." The district court therefore concluded that Defendant failed to establish prejudice and regardless of whether Defendant was afforded his right to an independent test, suppression was not required. However, there was no basis in the record to support the premise on which these conclusions were reached. In effect, the district court made findings of fact and conclusions of law without any evidentiary support while sitting in its capacity as an appellate court. This was improper and itself a basis for reversal. *See Cadena v. Bernalillo Cnty. Bd. of Comm'rs*, 2006-NMCA-036, ¶¶ 3, 18, 139 N.M. 300, 131 P.3d 687 (concluding that the district court improperly acted outside its capacity as an appellate court by engaging in fact finding).

{26}     Moreover, the district court erred in the analysis that it did employ. In coming to its conclusions, the district court relied on *Jones*, 1998-NMCA-076. However, that reliance was misplaced. In *Jones*, the defendant was arrested for DWI and submitted to a BAC test of his breath for alcohol. *Id.* ¶ 4. After being informed of his right to arrange for an independent test of his blood, he stated he wanted to call his doctor to perform the test. *Id.* ¶¶ 4-5. The arresting officer told the defendant that the police department had a blood technician on contract to perform blood tests at the jail, and did not allow the defendant to use a telephone, nor did he make any calls on the

17

defendant's behalf. *Id.* ¶¶ 5-6. Based on the BAC breath test results of .17 and. 17, the defendant was charged with aggravated DWI. *Id.* ¶¶ 4, 7. *See* § 66-8-102(D)(1) (providing that aggravated DWI consists of driving a motor vehicle with an alcohol concentration of sixteen one hundredths or more in the driver's breath or blood). At the defendant's trial for DWI in the metropolitan court, the court dismissed the aggravated portion of the DWI charge as a sanction because the State failed to afford the defendant an opportunity to have a person of his choosing draw his blood, *Jones*, 1998-NMCA-076, ¶ 7, but refused to suppress the breath alcohol test results. *Id.* ¶ 11. The defendant was found guilty of DWI, first offense, which was affirmed in his on the record appeal to the district court. *Id.* ¶ 7.

{27} The defendant in *Jones* then appealed to this court, arguing in part that he was entitled to suppression of the BAC test results because he was not afforded his statutory right to arrange for an independent test under Section 66-8-109(B). *Jones*, 1998-NMCA-076, ¶ 11. We stated it was "unlikely" that a blood alcohol test of the defendant's own choosing would have shown he was not driving while intoxicated, *id.* ¶ 30, and that the defendant's own test "would have had to have shown an error of 100% in the State's test." *Id.* ¶ 31. While *Jones* does not inform us on what basis these statements were made, it is well settled that such questions are matters of scientific expertise, and constitute adjudicative facts not subject to judicial notice.

18

*See State v. Day*, 2008-NMSC-007, ¶ 31, 143 N.M. 359, 176 P.3d 1091 (discussing the necessity of use of scientific retrograde extrapolation evidence to determine BAC at an earlier time); *State v. Baldwin*, 2001-NMCA-063, ¶ 17, 130 N.M. 705, 30 P.3d 394 ("But a BAC reading from a laboratory test is just a sterile number; by itself it tells us nothing about a driver's condition hours earlier. Extrapolating backward in time can be a difficult task even for experts."). With the foregoing statements as a backdrop, *Jones* held that any possible prejudice suffered by the defendant was cured by the dismissal of the aggravated portion of the DWI charge, and he was not entitled to any further relief. 1998-NMCA-076, ¶¶ 31-32.

{28} In this case, on the other hand, there is no evidence in the record on which the district court could make the findings it did to conclude that Defendant was not prejudiced. First of all, the issue was raised by the district court on its own motion for the first time on appeal, and Defendant never had an opportunity to argue to the district court why or how he was prejudiced. Secondly, no blood sample was taken or preserved to enable Defendant to prove prejudice, and the district court opinion fails to explain how Defendant could possibly prove what the results of a test would be on a blood sample which does not exist. Finally, unlike *Jones,* in which the trial court imposed sanctions for the statutory violation, no sanction was imposed in this case. For the foregoing reasons, we conclude that the district court improperly relied

19

on *Jones* in concluding that Defendant was not prejudiced when the State failed to afford Defendant his right under Section 66-8-109(B).

{29} Since we have concluded that Defendant's right to an independent test under Section 66-8-109(B) was violated, we now address the matter of sanctions. While the statute is silent on this question, we are confident that the Legislature intended for consequences to result when the State does not afford a driver the protections of Section 66-8-109(B). A right with no remedy for its violation is an empty right. Because our Legislature has established a procedure, consistent with due process, for preserving material evidence for independent testing in Section 66-8-109(B), we look to cases construing the right to access evidence material to guilt, innocence, or punishment for guidance on the question of sanctions.

{30} We begin with *State v. Lovato*, 1980-NMCA-126, 94 N.M. 780, 617 P.2d 169, where the defendant was convicted of homicide by vehicle while DWI on the basis of a test performed on a sample of his blood by a chemist of the police department. *Id.* ¶ 2. The test showed a blood alcohol content of .10 percent, the minimum at that time for presuming intoxication. *Id.* Because the State made no effort to preserve the blood taken from the defendant, and the blood kit was immediately destroyed after the blood analysis was completed, we concluded the defendant's right to due process was violated and we reversed and remanded for a new trial without the blood test

results. *Id.* ¶¶ 1, 3, 5, 6, 10. We said, "In effect, our holding is that if the State is going to use as evidence the results of a blood alcohol test, it must make provisions for its preservation so that if a timely request is made for retesting by the defendant, the sample taken is available." *Id.* ¶ 10.

{31} In *Lovato*, we concluded that because the defendant's right to due process was violated, he was entitled to suppression of the blood test results. Suppression of the blood test results may be the most appropriate remedy in most cases when Section 66-8-109(B) is violated. However, we do not hold that suppression is automatic. *Cf. State v. Chouinard*, 1981-NMSC-096, ¶¶ 23-26, 96 N.M. 658, 634 P.2d 680 (stating that the remedy for a due process violation—suppression or admission of the evidence with full disclosure of the loss and its relevance and import—lies in the discretion of the trial court). Our Supreme Court specifically stated that the trial court has discretion to craft a remedy when material evidence is lost in *Scoggins v. State*, 1990-NMSC-103, ¶¶ 10-11, 111 N.M. 122, 802 P.2d 631. This was a drug case where the only credible evidence against a defendant (latent fingerprints of the defendant) was negligently destroyed by the police, and our Supreme Court held that the trial court did not abuse its discretion in dismissing the criminal charges. *Id.* ¶¶ 10-11. Pertinent to the issue before us here, our Supreme Court said, "We defer to the trial court's discretion in deciding that testimony on the missing fingerprints

21

should be suppressed because it may have been impeached by lost evidence." *Id.* ¶ 10.

{32} We adopt the reasoning of *Lovato, Chouinard,* and *Scoggins* and hold that the remedy for a violation of a driver's right under Section 66-8-109(B) lies in the discretion of the trial court, subject to review on appeal for an abuse of discretion. In deciding what is an appropriate remedy, trial courts may consider all the facts of the case, including whether trial is before a jury or the bench, the materiality of the blood test results, and prejudice. In their consideration of prejudice, we caution trial courts to be mindful of the fact that a defendant cannot prove what the test result of a blood sample that does not exist would be. Because a sample was not preserved in violation of the defendant's statutory right, this should not weigh against the defendant. In *Scoggins* our Supreme Court did not require the defendant to prove what the results of a test of the destroyed latent fingerprints would have been, and the case before us is not materially different. Finally, in determining whether a statutory violation has occurred, and what sanctions are appropriate, we encourage trial courts to enter findings of fact and conclusions of law to facilitate appellate review.

## CONCLUSION

{33}    The judgment of the district court affirming the judgment of the metropolitan court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

{34}    **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**I CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

**M. MONICA ZAMORA, Judge (dissenting).**

**ZAMORA, J., dissenting.**

{35}    I agree that Section 66-8-109(B), as written, does not provide a defendant with a *meaningful* opportunity to arrange for and effectuate the timely performance of an independent chemical test. However, it is a function of our Legislature to make it so and revise the statute accordingly. For these reasons, I respectfully dissent.

{36}    The issue before this Court is whether providing Defendant with the Yellow Pages phone book and access to a telephone for a period of twenty to thirty minutes in the early hours of the morning meant that Defendant was given a *reasonable*, as opposed to *meaningful*, opportunity to arrange for an independent chemical test. *Jones* did not provide any guidance about how to undertake the analysis of whether an opportunity was reasonable. 1998-NMCA-076. We also noted that "the purpose of this subsection of the statute is to inform the person arrested of his or her right to arrange to have an independent chemical test performed by a person of his or her own choosing." *Id.* ¶ 19.

{37}    The Majority places an affirmative responsibility on law enforcement by concluding that not only must they advise an arrestee that the arrestee has the right to be given an opportunity to arrange for an independent test in addition to any test performed at the direction of a law enforcement officer, but that they also have a duty to assist an arrestee in arranging and effectuating an independent test. Perhaps the

24

uncertainty expressed by the metropolitan court as to whether Defendant's opportunity to arrange for independent testing was "meaningful," was the means to this end.

{38} To discern the Legislature's intent, we rely on the classic canons of statutory interpretation and "look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (internal quotation marks and citation omitted). When we interpret a statute, we must "read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350; *see also Miller v. New Mexico Dep't of Transp.*, 1987-NMSC-081, ¶ 8, 106 N.M. 253, 741 P.2d 1374 ("Statutes are to be read in a way that facilitates their operation and the achievement of their goals."). We must also take care not to "read into a statute . . . language which is not there, particularly if it makes sense as written." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted).

{39} The plain language of the statute mandates that an arrestee be provided *an opportunity to make arrangements* for an additional test. Section 66-8-109(B) does

25

not mandate that a law enforcement officer assist a person accused of DWI in arranging such a test, beyond providing the means with which to arrange for an independent chemical test. We have also concluded in *Jones* that "reading the entire statute . . . does not guarantee the arrestee an additional test will be performed, but only that the arrestee will be given a *reasonable* opportunity to arrange for an additional test." 1998-NMCA-076*, ¶* 24 (emphasis added). This also acomplishes the purpose of the subsection. *Id.* ¶ 19.

{40} The Majority's interpretation of "reasonable opportunity" to import the word "meaningful" into the statute is a substantive change to the law that is best left to the legislative branch. Article III, Section 1 of the New Mexico Constitution divides the state government into "three distinct departments, the legislative, executive and judicial[.] . . . The Legislature makes, the executive executes, and the judiciary construes the laws." *State v. Fifth Jud. Dist. Ct.*, 1932-NMSC-023, ¶¶ 8-9, 36 N.M. 151, 9 P.2d 691. Our Supreme Court has said that "the legislative branch is constitutionally established to create substantive law." *State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 21, 125 N.M. 343, 961 P.2d 768. "A determination of what is reasonably necessary for the preservation of the public health, safety and welfare of the general public is [also] a legislative function and should not be interfered with, save in a clear case of abuse." *State v. Collins*, 1956-NMSC-046, ¶ 8, 61 N.M. 184,

26

297 P.2d 325. It is not within our authority to expand Section 66-8-109(B) and doing so may create unintended consequences.

{41} The application of the plain language of Section 66-8-109(B) is consistent with the approach taken in other jurisdictions. *See Grizzle v. State*, 265 S.E.2d 324, 325 (Ga. Ct. App. 1980) ("[I]t is the duty of a police officer not to prevent a defendant from exercising his right to an independent test, but not his duty to insure the performance of such test[.]"); *Commw. v. O'Brien*, 750 N.E.2d 1000, 1003-04 (Mass. 2001) ("Once the police inform a defendant of his right to an independent medical examination . . . the police have no obligation to help him in exercising that right." (internal quotation marks and citation omitted)); *Commw. v. Alano*, 448 N.E.2d 1122, 1128 (Mass. 1983) (stating that police had a statutory duty to inform accused of the right to a test, but no statutory duty to tell accused how to obtain a test once one was requested); *Cosky v. Comm'r of Pub. Safety*, 602 N.W.2d 892, 894 (Minn. Ct. App. 1999) ("An officer is not required to assist a driver by furnishing supplies or transportation to facilitate an additional test. An officer is not required to instruct a driver on how to obtain an additional test."); *Provo City v. Werner*, 810 P.2d 469, 474 (Utah Ct. App. 1991) (stating that police have a "duty . . . to not frustrate or thwart reasonable attempts to obtain an independent test"); *Cf. Luebke v. N. Dakota Dep't of Transp.*, 1998 ND 110, ¶ 13, 579 N.W.2d 189 (holding that officers may be

27

required to do more than allow telephone access, where a driver shows that he has "made arrangements [for a test] with a qualified person of his own choosing, that the test would be made if he came to the hospital, that he so informed the personnel at the jail where he was under arrest" (alteration in original) (internal quotation marks and citation omitted)).

{42} There are several jurisdictions where providing DWI arrestees with telephone access has been deemed statutorily sufficient. *See State v. Hedges*, 154 P.3d 1074, 1078 (Idaho Ct. App. 2007) ("[P]olice . . . have a duty not to interfere with or affirmatively deny a defendant access to a telephone once a request has been made to make telephonic arrangements for an independent BAC test."); *Cosky*, 602 N.W.2d at 895 ("[The defendant's] right to obtain an additional chemical test . . . was vindicated when he was allowed to use a telephone to make the calls he wished to make[.]"); *Dake*, 529 N.W.2d at 49 ("[W]hile . . . the police cannot hamper a motorist's efforts to obtain independent testing, they are under no duty to assist in obtaining such testing beyond allowing telephone calls to secure the test."); *Luebke*, 1998 ND 110, ¶ 11 ("Generally, law officers . . . need only allow an accused access to a telephone." (internal quotation marks and citation omitted)). Defendant was given access to a telephone and a telephone book, and his ability to arrange

28

independent testing was not hindered by police, therefore he was afforded a reasonable opportunity to arrange for an independent chemical test.

{43}    Furthermore, under *Jones*, a defendant is only entitled to the remedy of suppression of his BAT test results in violation of the statute when he proves that: (1) he was deprived of a reasonable opportunity to arrange for independent testing in violation of Section 66-8-109(B), and (2) the statutory violation resulted in prejudice. *Jones*, 1998-NMCA-076, ¶ 29. A failure to prove either element is dispositive. *Id.* ¶ 31.    Accordingly, the district court properly based its decision on whether Defendant demonstrated prejudice. Defendant's BAT results were .12 and .11. Defendant did not present any evidence to show an independent chemical test would have demonstrated error in his BAT results such that it would bring him below the per se limit of .08. Additionally, a review of the record reveals that Defendant did have an opportunity to argue the issue of harmless error.

{44}    The constitutional due process right to obtain possibly exculpatory evidence includes a right to obtain an alcohol test independent of the test administered by the arresting officer.  The Defendant has the right to be free of police interference when obtaining this test. The way our statutory provision is currently written means being informed of this statutory right, being given a reasonable opportunity to arrange for the independent testing, and nothing more.

29

{45}     I respectfully dissent from the Opinion of the Court and would hold that Defendant was given a reasonable opportunity to arrange for an independent chemical test as requred by the Implied Consent Act, and affirm the district court.

_____

**M. MONICA ZAMORA, Judge**