**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: March 10, 2016

**NO. 33,902**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**JOHNNY MAXWELL,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY**
**Edmund H. Kase III, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellant

The Woods Law Firm
Janice K. Woods
Socorro, NM

for Appellee

# OPINION

**WECHSLER, Judge.**

{1}     We address in this appeal whether the provision of the Implied Consent Act that entitles a person arrested for driving under the influence to a reasonable opportunity to arrange for an independent chemical test requires the arresting officer to transport the person to obtain the test. We hold that it does not and reverse the district court's order suppressing the results of the breath tests taken by the arresting officer.

## BACKGROUND

{2}     The facts are not disputed. On December 22, 2012, State Police Officer Toby Lafave observed Defendant Johnny Maxwell driving without a seatbelt and without adequate tail light illumination. After stopping Defendant, Officer Lafave observed signs of intoxication that led him to conduct field sobriety tests. Observing further clues of impairment, he arrested Defendant on suspicion of driving while under the influence of liquor (DWI). Officer Lafave read Defendant the advisory under the Implied Consent Act, NMSA 1978, Section 66-8-109(B) (1993), and administered a breath alcohol test. The two samples registered .10 grams of alcohol in two hundred ten liters of breath.

{3} Officer Lafave took Defendant to the Socorro County Detention Center and while there, Defendant asked for an independent test. Officer Lafave provided Defendant with a telephone and a telephone directory. Defendant called the Socorro General Hospital and spoke with a nurse in the emergency room. He told her that he needed a blood draw for DWI testing and was told to "come on up and they would administer the test." Defendant asked Officer Lafave to transport him to the hospital, and Officer Lafave declined, saying that the test had to be performed at the detention center.

{4} Shortly thereafter, Defendant was released on bail, and his mother drove him to the hospital. Defendant arrived at the hospital approximately fifteen to twenty minutes after his telephone conversation with the nurse. At the hospital, Defendant spoke with the nurse and an emergency room doctor. The doctor told him that he would not perform the test without an order because "the situation was not life threatening."

{5} Defendant was charged in magistrate court with DWI (third offense) in violation of NMSA 1978, Section 66-8-102(C)(1) (2010). He entered a conditional plea to DWI (second offense), based on a plea and disposition agreement, reserving his right to appeal a motion to suppress. On appeal, the district court suppressed the breathalyzer test samples taken by Officer Lafave, finding that Officer Lafave's

refusal to transport Defendant to the hospital to conduct the independent test was unreasonable, in violation of Defendant's rights under Section 66-8-109(B) and (E) to have an additional test performed and a reasonable opportunity to arrange for the test. The district court further found that Defendant was prejudiced by the State's statutory violation. The State appealed the district court's order. *See* NMSA 1978, § 39-3-3(B)(2) (1972) (permitting the state to appeal an order suppressing evidence under specified conditions).

**THE RIGHTS PROVIDED BY THE IMPLIED CONSENT ACT**

{6} Under the Implied Consent Act, "[a]ny person who operates a motor vehicle" in the state who is arrested for DWI is "deemed to have given consent" to approved breath and/or blood tests to determine the drug or alcohol content of his or her blood, as determined by a law enforcement officer. NMSA 1978, § 66-8-107(A) (1993). The test is administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person has been driving under the influence of alcohol or drugs. Section 66-8-107(B). Section 66-8-109(B) provides:

> The person tested shall be advised by the law enforcement officer of the person's right to be given an opportunity to arrange for a physician, licensed professional or practical nurse or laboratory technician or technologist who is employed by a hospital or physician of his own choosing to perform a chemical test in addition to any test performed at the direction of a law enforcement officer.

3

The cost of the test performed when a person has exercised the right to have an independent test described in Section 66-8-109(B) is paid by the law enforcement agency employing the law enforcement officer directing the administration of the chemical test. Section 66-8-109(D).

{7} The issue before us is whether the right of the Implied Consent Act to an independent test includes the obligation of a law enforcement officer to transport the person tested to another location for the test to be performed. As a matter of interpretation of the Implied Consent Act, we address the issue under de novo review. *See State v. Chakerian*, 2015-NMCA-052, ¶ 10, 348 P.3d 1027 (applying de novo review to interpret the Implied Consent Act when the historical facts were not disputed), *cert. granted*, 2015-NMCERT-005, ___P.3d___ (No. 35, 121, May 11, 2015).

**APPLICATION OF THE IMPLIED CONSENT ACT**

{8} When engaging in statutory interpretation, we endeavor to discern the intent of the Legislature in adopting a statute. *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. Our best indication of such intent is the language of the statute itself. *Gen. Motors Acceptance Corp. v. Anaya*, 1985-NMSC-066, ¶ 15, 103 N.M. 72, 703 P.2d 169.

{9} We recently discussed the intent of the Implied Consent Act in some detail in *Chakerian*, 2015-NMCA-052, ¶¶ 14-18. We observed that, in enacting Section 66-8-109(B), the Legislature balanced its effort to deter and prosecute DWI with the ability of an arrested driver "to reasonably preserve and test the critical and potentially exonerating evidence" surrounding the chemical tests administered under the Implied Consent Act. *Chakerian*, 2015-NMCA-052, ¶ 18.

{10} In this context, the Legislature has adopted Section 66-8-109(B) that requires a law enforcement officer directing the administration of a chemical test under the Implied Consent Act to advise the person being tested "of the person's right to be given an opportunity to arrange for" a specified medical professional chosen by the person being tested "to perform a chemical test in addition to any test performed at the direction of a law enforcement officer." Section 66-8-109(B). The language of Section 66-8-109(B) does not guarantee that an independent test will be performed, even if requested by the person being tested. *State v. Jones*, 1998-NMCA-076, ¶ 24, 125 N.M. 556, 964 P.2d 117. Rather, it requires that law enforcement personnel provide a reasonable opportunity for the person being tested to arrange for an independent test. *Id.*

{11} In *Jones*, we held that a law enforcement officer did not afford a person to be tested a reasonable opportunity under Section 66-8-109(B) when the officer denied

the person's request to call his doctor and denied him access to a telephone. *Jones*, 1998-NMCA-076, ¶ 25. In *Chakerian*, we considered whether the law enforcement officer provided a reasonable opportunity to the defendant to be tested when the officer gave the defendant a telephone and a Yellow Pages telephone directory in the early hours of the morning, and the defendant did not make arrangements for an independent test. 2015-NMCA-052, ¶¶ 4, 21. We held that the officer did not comply with the statutory requirement. *Id.* ¶ 23. Specifically, we stated that the officer had only provided the defendant "with a mere possibility of being able to arrange for an independent test," requiring that compliance with Section 66-8-109(B) demanded instead a "meaningful opportunity" to arrange for an independent test. *Chakerian*, 2015-NMCA-052*,* ¶ 22; *but see id.* ¶¶ 39-40 (Zamora, J., dissenting) (stating that the language of Section 66-8-109(B) requiring "an opportunity to make arrangements" does not import the word "meaningful" and disagreeing that Section 66-8-109(B) requires a "meaningful opportunity" (emphasis omitted)).

{12}   The statutory sufficiency of Officer Lafave providing Defendant a telephone and a telephone directory in this case is not the issue. Defendant used the opportunity afforded him to arrange for an independent test. He called the hospital and was told by a nurse to come to the hospital to receive the test.

{13}    Thus, different from *Chakerian*, the issue in this case is whether, by requiring in Section 66-8-109(B) that a law enforcement officer provide "an opportunity to arrange" for an independent test, the Legislature intended the language "an opportunity to arrange" to include the requirement that the officer transport a person being tested to a hospital to receive an independent test. We decline to reach that result.

{14}    Most significantly, the statutory language does not state such a requirement. *Harris v. Vasquez*, 2012-NMCA-110, ¶ 10, 288 P.3d 924 ("[Appellate courts] will not read into a statute language that is not there[.]"). In the Implied Consent Act, the Legislature created the right of a person being tested to an independent test in a limited fashion. By way of contrast, it did not adopt the broader language adopted by some other states clearly stating the right to an independent test. *See, e.g.*, N.J. Stat. Ann. § 39:4-50.2(c) (West 2008) ("In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection."). Rather, the language of Section 66-8-109(B) states only that the directing law enforcement officer must advise a person to be tested of the "right to be given an opportunity to arrange for" an independent test.

{15} Because of this difference in statutory language, the cases from other states that Defendant cites in support of his position do not assist this Court in its determination. *See Ward v. Alaska*, 758 P.2d 87, 89-91 (Alaska 1988) (addressing an Alaska statute that stated that the person tested may have a qualified medical person "of the person's own choosing administer a chemical test in addition to the test administered at the direction of the law enforcement officer"); *State v. Hughes*, 352 S.E.2d 643, 644 (Ga. Ct. App. 1987) (interpreting a Georgia statute providing for the right to "have a . . . qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer" (omission in original) (emphasis, internal quotation marks, and citation omitted)); *People v. Underwood*, 396 N.W.2d 443, 444 (Mich. Ct. App. 1986) (considering a Michigan statute that provided, in part, that a person being tested "shall be given a reasonable opportunity to have a person of his or her choosing administer [one] of the chemical tests described in this section" (internal quotation marks and citation omitted)), *overruled on other grounds by People v. Anstey*, 719 N.W.2d 579 (Mich. 2006); *State v. Nicastro*, 527 A.2d 492, 493-96 (N.J. Super. Ct. Law Div. 1986) (per curiam) (involving a New Jersey statute that provided that "the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood

made by a person or physician of his own selection" (emphasis omitted)), *disagreed with by State v. Ettore*, 548 A.2d 1134 (N.J. Super. Ct. App. Div. 1988).

{16}     We consider the difference in statutory language from that of other states to be significant in that our Legislature selected limited language in adopting the right to an independent test. In *Jones*, we interpreted this language to require that persons to be tested be given "a reasonable opportunity to contact a qualified person of their choosing who may be able to perform the test." 1998-NMCA-076, ¶ 24. In *Chakerian*, we interpreted Section 66-8-109(B) to include an officer's duty to "meaningfully cooperate with an arrestee's express desire to arrange for" a test. *Chakerian*, 2015-NMCA-052, ¶ 19. Regardless of the manner in which we describe the duty of the law enforcement officer, the Legislature limited that duty to relate only to the "opportunity to arrange for" an independent test. Section 66-8-109(B). In this case, Defendant did "arrange for" an independent test, and he does not argue on appeal that he did not have the opportunity to do so. Thus, at the time that Defendant requested that he be transported to the hospital, he had already been afforded the right required by Section 66-8-109(B). His request for transportation, therefore, was in addition to, and an expansion of, the Section 66-8-109(B) right to have an opportunity to arrange for the test.

9

{17} We acknowledge the practical difficulties a person to be tested may have in obtaining an independent test. Indeed, when Defendant arrived at the hospital approximately fifteen to twenty minutes after he had called to arrange for a test, the emergency room doctor refused to administer the test. But, Section 66-8-109(B) does not require a directing law enforcement officer to fulfill arrangements made by the person to be tested. As we stated in *Jones*, Section 66-8-109(B) "does not guarantee the arrestee an additional test will be performed, but only that the arrestee will be given a reasonable opportunity to arrange for an additional test." *Jones*, 1998-NMCA-076, ¶ 24. Nor does it guarantee that when a person to be tested contacts a person qualified to perform the test that "the test will actually be performed by the person contacted." *Id.* If we were to read such requirements into Section 66-8-109(B) in order to correct practical difficulties in the operation of the statute, we would be wrongfully assuming the responsibility of the Legislature. *Harris*, 2012-NMCA-110, ¶ 10 ("[Appellate courts] will not read into a statute language that is not there[.]").

{18} Our reading of Section 66-8-109(B) is consistent with the balance the Legislature created in enacting Section 66-8-109(B). *See Chakerian*, 2015-NMCA-052, ¶ 18 ("On the one hand, the Legislature has provided the [s]tate with strong tools for deterring and prosecuting DWI offenses, and on the other hand, the Legislature has protected the rights of citizens by requiring the [s]tate to provide an arrestee with

10

a meaningful opportunity to reasonably preserve and test the critical and potentially exonerating evidence."). Defendant used the opportunity afforded him to arrange for an independent test as required by the statute. From its plain language, the Legislature did not intend more. We do not agree with Defendant's interpretation that would require law enforcement officers to transport arrested drivers to locations of the drivers' choosing, removing the officers from their regular law enforcement responsibilities.[1] *Montoya v. McManus*, 1961-NMSC-060, ¶ 36, 68 N.M. 381, 362 P.2d 771 ("An interpretation of a statute will never be adopted which will render the application thereof absurd or unreasonable.").

{19}    Nor do we believe that Section 66-8-109(E) bears on the issue. That section provides that if a person being tested has an independent test performed, the law enforcement agency of the officer directing the test shall pay for the cost of the independent test. Indeed, that section emphasizes the importance of the right to the person being tested, *Chakerian*, 2015-NMCA-052, ¶ 18, but it does not expand upon the right stated in Section 66-8-109(B).

---

[1]Defendant discusses Department of Public Safety Policies and Procedures concerning chemical testing procedures that were part of the record in his brief. We do not address these policies and procedures because the issue before us relates to the requirements of the Implied Consent Act, not internal procedures.

**CONCLUSION**

{20}     The Implied Consent Act does not require a law enforcement officer directing chemical testing of a driver arrested on suspicion of DWI to transport the driver to another location to receive an independent test that the driver has arranged. We reverse the district court's order suppressing the breath test samples taken by Officer Lafave and remand for further proceedings.

{21}     **IT IS SO ORDERED.**

 

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**M. MONICA ZAMORA, Judge**