## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2019-NMCA-027**

**Filing Date: February 18, 2019**

**NO. A-1-CA-34796**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JUHREE SMITH,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Certiorari Denied, May 1, 2019, No. S-1-SC-37596. Released for Publication July 2, 2019

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### OPINION

**KIEHNE, Judge Pro Tempore.**

**{1}** Defendant Juhree Smith appeals her conviction for aggravated driving under the influence of intoxicating liquor (DWI), in violation of NMSA 1978, Section 66-8-102(D)(1) (2010, amended 2016), arguing that the results of her breath alcohol test should have been excluded because she was not given a reasonable opportunity to obtain an independent test under the Implied Consent Act (the Act), NMSA 1978, §§ 66-8-105 to -

112 (1978, as amended through 2015). Defendant also argues that the district court committed fundamental, plain, or structural error by commenting on her decision to testify at trial and asking about her understanding of her right not to testify. Finding no error, we affirm Defendant's conviction.

## BACKGROUND

**{2}** On September 1, 2013, arresting officers pulled over Defendant's vehicle, administered field sobriety tests, and placed her under arrest for DWI. An officer, reading from a standardized card, explained to Defendant a motorist's rights and responsibilities under the Act, an explanation which, the parties agree, included advising her of her right to arrange for an independent chemical test performed by a medical professional of her choosing. After doing so, the officer asked Defendant to submit to a breath alcohol test, to which Defendant responded, "No, I just want to give blood." Defendant was transported to the police station where an officer explained to her the consequences of refusing to take the breath test; this encounter lasted anywhere from ten to thirty minutes. After discussing her rights under the Act with the officer, Defendant then decided that she would take the breath test. But once the breath test machine was set up, Defendant again refused to take the test. The testing officer continued to run the breathalyzer machine, explaining to Defendant that because she had refused to take the breath test, the machine would print a blank results page, which would be used against her in court. The officer told Defendant that she had one final chance to take the breath test, an opportunity which Defendant took by blowing into the machine. The test measured two samples of Defendant's breath alcohol content at 0.19 and 0.18, respectively. After the breath test was completed, Defendant did not renew her request for a blood test.

**{3}** Defendant was convicted in the magistrate court of aggravated DWI, in violation of Section 66-8-102(D)(1), and failure to maintain a lane, contrary to NMSA 1978, Section 66-7-317 (1978). Defendant's case proceeded to the district court on a de novo appeal of the magistrate court's decision. In the district court and during the State's presentation of its case, Defendant moved to exclude the breath test results, arguing that her rights under the Act had been violated because the officers involved in her arrest did not give her the opportunity to take a blood test in addition to the state-administered breath test. The district court denied Defendant's motion, noting that Defendant first requested a blood test after an officer read her a card that explained the Act, then agreed to take a breath test after some discussion with the officers, and made no demand for an independent test following the breath test. Defendant appeals.

## DISCUSSION

**{4}** Defendant raises two issues: (1) the district court should have excluded her breath alcohol test results because arresting officers failed to give her an opportunity to arrange for an alternative test as guaranteed by Section 66-8-109(B) of the Act; and (2) the district court's statements to Defendant about her right to testify at trial constituted fundamental, plain, or structural error.

# I.     The District Court Properly Denied Defendant's Motion to Exclude

**{5}**     "Rulings admitting or excluding evidence are generally reviewed for an abuse of discretion." *State v. Campbell*, 2007-NMCA-051, ¶ 9, 141 N.M. 543, 157 P.3d 722. In this case, however, the historical facts are not disputed, and we construe the district court's statements as a ruling that the officers complied with the Act. We therefore apply de novo review in resolving Defendant's claim that the officers did not comply with the Act. *See State v. Maxwell*, 2016-NMCA-061, ¶ 7, 376 P.3d 882 (applying de novo review to interpret the Act when the facts were undisputed); *State v. Chakerian*, 2015-NMCA-052, ¶ 10, 348 P.3d 1027 (same), *rev'd on other grounds*, 2018-NMSC-019, ___ P.3d ___.

**{6}**     Defendant admits that after the officers advised her about the Act, she refused to take a breath test and asked instead to take a blood test, but argues that police should have construed her statement, not merely as a refusal to take their chosen test, but also as a request for an independent test. Defendant further contends, assuming we accept her initial premise, that once she submitted to the breath test, the Act obligated the officers to provide her with a reasonable opportunity to obtain an independent blood test. The officer's failure to do so, the argument goes, violated her rights under the Act, thus requiring the exclusion of the results of the state-administered breath test. At the very least, Defendant argues, the officers should have clarified whether she wanted an independent test.

**{7}**     Under the Act, a motorist driving a vehicle in New Mexico is deemed to have consented to a blood or breath test, or both, "as determined by a law enforcement officer," if the motorist is arrested on suspicion of driving while under the influence of alcohol or drugs. Section 66-8-107(A). A law enforcement officer may only direct the administration of such a test if he or she has reasonable grounds to believe that the motorist has been driving while under the influence of alcohol or drugs. Section 66-8-107(B). When police officers determine that a test should be administered to a motorist, the Act obligates them to advise the motorist of his or her "right to be given an opportunity to arrange for" a medical professional of the motorist's choice "to perform a chemical test in addition to any test performed at the direction of a law enforcement officer." Section 66-8-109(B). In addition to the obligation to advise an arrested motorist of the right to arrange for an independent test, Section 66-8-109(B) requires law enforcement "to provide the arrestee the means to arrange for a qualified person to conduct a chemical test[,]" and not to "unnecessarily hinder or interfere with an arrestee's attempt to exercise the right to an additional test." *Chakerian*, 2018-NMSC-019, ¶ 24. Our Supreme Court has rejected attempts to impose additional duties on law enforcement officers "beyond the explicit mandates of Section 66-8-109(B)[.]" *See id.* ¶ 22 (rejecting this Court's imposition of a duty to "meaningfully cooperate" with an arrestee's expressed desire for an independent chemical test).

**{8}**     In the matter at hand, we conclude that law enforcement officers did not violate the Act because Defendant never affirmatively asked for an independent chemical test, and thus the officers' obligation to provide her with the means to arrange for such a test

never materialized. Section 66-8-109(B) required that police advise Defendant of her "right to be given an opportunity to arrange for" a medical professional of her choice "to perform a chemical test *in addition to* any test performed at the direction of a law enforcement officer." (Emphasis added.) Under the statute's plain language, Defendant's right to ask for an opportunity to arrange for an additional chemical test would be triggered only if she first submitted to the test that police asked her to take. Significantly, however, Defendant's only request for a blood test was made as part of her refusal to take the officer-designated breath test. Based on the totality of the circumstances, *see Chakerian*, 2018-NMSC-019, ¶ 22, it was reasonable for the district court to conclude that Defendant did not ask for a blood test *in addition to* the breath test that the officers requested, but *instead of* that test. Although Defendant eventually agreed to take the officer-designated breath test, she did not, after submitting to the test, ask for an opportunity to arrange for an additional blood test.

**{9}** Defendant argues, and cites out-of-state cases, for the proposition that police should have construed her initial request for a blood test instead of a breath test as a request for an additional test, or at least should have asked her if that is what she intended, but Section 66-8-109(B) contains no such requirements. And under our Supreme Court's decision in *Chakerian*, we are not at liberty to add obligations that the Legislature did not see fit to include in the statute. Defendant points to no New Mexico authority supporting the notion that our Implied Consent Act required the officers to inquire about her understanding of her right to an additional test, or to clarify whether she wanted an additional test. Being unaware of any such authority, we assume none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{10}** On these facts, we hold that law enforcement officers did not violate the Act and affirm the district court's decision to admit Defendant's breath test results into evidence. Because we hold that no statutory violation occurred, we do not reach Defendant's argument that exclusion of the breath test results is the proper remedy for such a violation.

## II.     The District Court Did Not Violate Defendant's Right to Testify

**{11}** Defendant argues that the district court violated her right to testify in her own defense, and interfered with her attorney-client relationship, by unnecessarily questioning Defendant's decision to testify, and in so doing, misstated the relevant law, thus prompting Defendant's decision not to testify. Defendant concedes that she failed to preserve these issues for review but argues that the district court's actions constituted fundamental, plain, or structural error. Because we hold that the district court did not act improperly, we need not address Defendant's fundamental, plain, or structural error arguments.

**{12}** Before trial began, defense counsel told the district court that he did not anticipate calling any witnesses. After the State rested its case, defense counsel called

one of the arresting officers and asked him about the reasons that he gave Defendant for the traffic stop. Defense counsel then conferred with Defendant for less than a minute before saying, "Your Honor, defense calls [Defendant] to the stand." After Defendant was sworn in, but before testifying, the district court asked Defendant whether she understood her rights to testify and not to testify, and whether she had had an opportunity to confer with defense counsel about whether she should testify:

| District Court: | Ms. Smith, before [defense counsel] asks you any questions, I want to address a couple of things with you. You know you have the right to testify today? You know you also have the right not to testify, are you realizing that? |
| --- | --- |
| Defendant: | Yes ma'am. |
| District Court: | And are you aware that if you do not testify, the court will not in any way hold that against you or infer, you know, anything negative, any guilt or anything because you chose not to take the stand. Are you aware of that? |
| Defendant: | Yes, your honor. |
| District Court: | Have you had an opportunity to talk with your attorney about whether or not it [is] a good idea to take the stand? |
| Defendant: | Not that . . . we have [not] really talked if it was a good idea or not. |

**{13}** The district court then stated to Defendant:

I [am] going to take a brief recess so that you can talk with [your attorney] . . . you know you do [not] have to testify if you do [not] want to. You may testify if you choose to. That decision is a decision you need to make with your attorney, discussing whether or not it would be in your best interest. You also need to be aware that if you do choose to testify, not only do you answer [defense counsel's] questions, but [the prosecutor] gets to question you also, and I may have questions for you. Okay?

Defense counsel did not object to any portion of the above-quoted colloquy and, in fact, thanked the district court before a recess was taken to allow Defendant to confer with counsel. When the bench trial resumed ten minutes later, the district court asked

Defendant if she had an opportunity to speak with her attorney. Defendant responded that she would not be testifying. Defense counsel responded, "She has your honor," and the defense rested.

**{14}** Defendant argues that the district court's inquiry and advisements violated her right to testify and compromised her attorney-client relationship with trial counsel. It is, of course, true that a criminal defendant's right to testify at her own trial "is an integral part of an accused's constitutional right to trial by jury[,]" and it is ultimately up to the criminal defendant to decide whether to testify, regardless of her attorney's advice. *State v. Henry*, 1984-NMCA-040, ¶ 19, 101 N.M. 277, 681 P.2d 62. If the defendant decides not to testify, the district court "is not required to" question the defendant about whether her decision to waive the right was made knowingly and intelligently. *Id.* ¶ 22.

**{15}** Whether a district court is *required* to question a criminal defendant about his or her decision to testify or not to testify is not the same as whether the court may, in its discretion, make such an inquiry. The parties have not cited, and we have not found, any New Mexico cases that address this precise issue. We therefore turn to the cases from other jurisdictions that the parties have cited. As these other courts have observed, the primary responsibility for advising a criminal defendant about his or her rights to testify and not to testify, and the benefits and risks of those decisions, rests mainly with defense counsel. *See, e.g.*, *State v. Denson*, 799 N.W.2d 831, 844 (Wis. 2011). And a trial court's decision to inject itself into the proceedings to question a defendant or offer advice about those rights carries with it the risk that the defendant may perceive that the judge disapproves of his or her decision, and may influence the defendant to change his or her mind, which would intrude on the attorney-client relationship or interfere with the defense strategy. *Id.*; *see also People v. Peden*, 878 N.E.2d 1180, 1186-87 (Ill. App. Ct. 2007) (identifying the same risks). But these cases also recognize that, notwithstanding the potential risks involved, a trial court has the discretion to engage a defendant on the record about his or her rights to testify and not to testify so as to ensure that any waiver of those rights is knowing and voluntary. *See Peden*, 878 N.E.2d at 1187 (stating that despite the risks, "a trial court has discretion to admonish a defendant of his right against self-incrimination"); *Denson*, 799 N.W.2d at 845 ("recommend[ing] an on-the-record colloquy [about a defendant's decision to testify] as the better practice").

**{16}** Here, we are not persuaded that the district court abused its discretion. The district court's questioning was not gratuitous; it had good reason to question Defendant about whether she understood her rights, and whether she had had an adequate opportunity to consult with defense counsel about the advantages and disadvantages of testifying. As indicated above, defense counsel, before trial, told the district court that he did not anticipate calling any witnesses to testify. After the State rested its case, and after calling one officer to testify, defense counsel called Defendant to testify after conferring with her for a matter of seconds. In these circumstances, the district court could reasonably have been concerned that Defendant's decision to testify was made in a hurried fashion, and therefore its decision to question Defendant about the issue was reasonable. Indeed, the district court's concern turned out to be justified, because Defendant confirmed that she had not in fact talked through the decision with defense

counsel. The district court did not use any language suggesting that a decision to testify would be unwise or imprudent, but merely asked if Defendant understood her rights to testify and not to testify; that a decision not to testify would not be held against her; and that if she did testify, she would be subject to cross-examination. The district court raised the subject only once, and after Defendant and her attorney discussed the issue during the court-ordered recess, the district court respected Defendant's ultimate decision not to testify and did not question her further. *Cf. People v. Peden*, 878 N.E.2d at 1188 (concluding that the trial court's "excessive and repetitive admonishments regarding issues of defense strategy and defendant's right to testify" were improper).

**{17}** Finally, although Defendant argues that the district court's brief inquiry and statements infringed on the attorney-client relationship and induced her decision not to testify, Defendant offered no evidence in support of these bald assertions. Defendant could have filed a motion for a new trial and requested a hearing to present testimony that the district court's remarks affected her decision to testify, but she did not do so. "It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted).

**{18}** Defendant also argues that the district court misstated the law by telling her that the decision of whether or not to testify "is a decision you need to make with your attorney[.]" Defendant contends that this is a misstatement of the law because it conveyed the message that the decision about whether to testify was for her and her attorney to jointly make, rather than a decision solely belonging to Defendant. *See Henry*, 1984-NMCA-040, ¶ 19 (stating that the decision to testify belongs to the criminal defendant, who may choose to exercise that right even contrary to the advice of counsel). As the State points out, however, Defendant has offered no evidence that, as a result of the district court's isolated remark, she believed that the decision to testify was not hers alone, or that defense counsel did not properly advise her that the decision about whether or not to testify was ultimately hers to make, or even that defense counsel advised her not to testify.

**CONCLUSION**

**{19}** We affirm Defendant's conviction for aggravated DWI.

**{20} IT IS SO ORDERED.**

**EMIL J. KIEHNE, Judge Pro Tempore**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**LINDA M. VANZI, Judge**